# Philadelphia *versus* Scott.

1. Police powers may reach to the destruction of property to prevent the spread of a conflagration ; or to the removal, at the expense of the owner, of a nuisance tending to breed disease; in either case compensation is not a condition of the exercise of the power.

2. The exercise of the police power is generally based on disaster, fault or inevitable necessity.

3. The power of eminent domain is conditioned generally on compensation to the owner and is founded in public utility.

4. The owner of land on an inland tide-water river has an absolute title to the soil to the high-water line qualified to the low-water line by the public right of navigation.

5. Such owner cannot use the soil between these lines to the prejudice of public right, and the state can improve the intermediate space for public use without compensation to him.

6. No duty lies on the owner of flat or cripple lands lying between high- and low-water lines to shut out the stream or to exclude the natural flow of the river by banks.

7. The state, from its right to protect navigation, can bank out the water without compensation to the owner ; but cannot improve at his expense.

8. The private interests of other owners of similar lands cannot be made a ground for banking at his expense.

9. Where the state under her sovereign authority has at her own expense banked out the water and left the owner in possession of the improvement, the duty of repair falls on him.

10. The Act of March 25th 1848, to provide for the repairs of meadow banks on the Delaware front, &c., was to compel the repairs of existing banks, not to construct them.

11. The Act of 1848 enacts that the district commissioners, upon complaint of any person owning river fronts liable to be damaged by overflow, that the banks are out of repair, &c., give notice to the owner of the part out of repair to repair the same in forty-eight hours ; if he neglects, the commissioners shall repair the bank and enter the cost as a lien against the premises and collect it by scire facias, and in defence the owner shall show only that it has been paid ; all matters necessary for recovery shall be considered proved by the lien and scire facias. The act provides no mode for determining the necessity for the repair; it therefore does not furnish due process of law within the Bill of Rights and is unconstitutional.

12. A law must furnish some just form or mode in which the duty of the citizen shall be determined before he can be visited with a penalty for nonperformance.

13. The proceeding must be in its nature judicial; it is not necessary that it should be before one of the ordinary judicial tribunals of the state.

14. Craig *v.* Kline, 15 P. F. Smith 413 ; Rutherford's Case, 22 P. F. Smith 82, recognised.

February 8th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the District Court of *Philadelphia :* Of January Term 1874, No. 235.

This was a scire facias sur municipal claim, issued May 18th 1872, by the city of Philadelphia, to the use of Adam Guyer, to the use of William S. Blight and Stephen B. Poulterer, against Freeman Scott, owner, &c.

[Philadelphia v. Scott.]

The claim was filed December 10th 1870, for $5500, against a piece of land owned, &c., by Freeman Scott, situate in the late district of Richmond, now the Twenty-fifth ward of the city of Philadelphia, bounded, &c.: "Beginning at the southeasterly side of Richmond street, * * * thence extending southeastwardly * * * to low-water mark on the river Delaware; thence extending southwestwardly along the river Delaware at low-water mark * * * to the place of beginning. * * * The said claim being for work and labor done, and materials, * * * furnished and used * * * in repairing and rebuilding, and rendering safe and secure the bank of the meadows along the river Delaware in front of the above-named premises, in pursuance of a contract dated the sixteenth day of April, Anno Domini eighteen hundred and seventy, made between the said Adam Guyer and the city of Philadelphia, and in compliance with the Act of Assembly, approved the twenty-fifth day of March, Anno Domini eighteen hundred and forty-eight, entitled 'An Act to provide for the repairs of the meadow banks upon the Delaware front, in the county of Philadelphia,' &c., and the city ordinance, approved the first day of July, Anno Domini eighteen hundred and sixty-three, entitled 'An Ordinance to provide for the repairs of the meadow banks upon the Delaware river.'"

The body of the act (Pamph. L. 250) is:—

"That it shall be the duty of the commissioners of the district of Richmond, * * * or of the supervisor * * * of roads in such portion or portions of said county, containing such banks * * * or of any person or officer duly authorized by them, for such purposes, upon complaint made to him or them, by any person or persons owning property fronting upon such river, or liable to be damaged by the overflow of the same, that said banks, or any part thereof are out of repair, or in a ruinous, unsafe, and insecure condition, to give notice forthwith to the owner or owners of such part or portion to repair the same within forty-eight hours after such notice; which said notice shall be given to the owner * * * and in case such owner or owners shall neglect or refuse to cause such repairs to be made within the time aforesaid, or the same shall be defectively or insecurely done, it shall be the duty of such supervisor or commissioners to cause the said banks to be well and thoroughly repaired, and rendered safe and secure, for which purpose they shall have full right and authority to enter into and upon such banks, and the premises thereto adjacent, and after said repairs are so done they shall enter the same as a lien against the said premises, and the owners or reputed owners thereof, * * * and the same shall be recovered by an action of scire facias. * * * Upon the trial of such action, the said defendant shall only be permitted to aver and prove in defence that the said lien, in whole or in part, has been paid since the same was filed, and that all mat-

31 P. F. SMITH—6

ters necessary for a recovery, on the part of plaintiffs, shall be considered as proved by the production of the lien and scire facias thereon, at the time of trial.

A city ordinance of July 1st 1863 made it the duty of the chief commissioner of highways, upon complaint made by persons owning property on the Delaware river, as is mentioned in the Act of Assembly, to proceed as is provided in the act. After making the repairs the chief commissioner " shall render· to the owner of the part of the bank repaired a bill of the costs and expenses of the repair, and if not paid in ten days, it shall be returned to the city solicitor, who shall enter a lien and proceed upon it," &c.

The case was tried October 27th 1873, before Mitchell, J.

The plaintiff gave in evidence the claim and the scire facias.

. The defendant gave evidence for the purpose of showing that he had not received notice from the highway department, with other evidence not important to state, and in his first point requested the court to charge :—

" That the Act of 1848, and the ordinance of 1863, confer no authority to charge the land of the defendant with the cost of the work set forth in the claim filed, and the verdict must be for the defendant."

The court refused to charge as requested, but reserved the question, " whether the plaintiff has shown any authority of law by virtue of which he can recover."

The verdict was for the plaintiff for $6445.16, subject to the reserved question.

The court afterwards entered judgment for the defendant on the question reserved, *non obstante veredicto,* Judge Mitchell delivering the opinion, viz :—

" It is quite clear that this act, if taken literally as to its prohibition of all matters of defence upon the trial, other than payment after the filing of the claim, is contrary to the provisions of the Bill of Rights.

" It is certainly not remedy by due course of law, when defendant's property is charged for certain work, and all inquiry is closed as to just and substantial defences, and nothing left to him to say but that he has paid the bill, though the price may be excessive, the work badly done, or even not done at all.

" It is true that provisions in regard to municipal claims that the defendant shall be permitted to deny only that the work was done, or prove that the price was greater than the value, or that the claim has been paid or released, have been sustained, yet in none of these acts that have been brought to our attention, has there been such a peremptory prohibition of all the elements of defence as in this present act, and wherever substantial defences have been shown, though not within the permission of the statutes, the courts have unhesitatingly allowed their introduction. Thus

[Philadelphia *v.* Scott.]

a defendant may set up that the city exceeded its authority, by paving more than the distance allowed at one time : Kensington *v.* Keith, 2 Barr 218 ; or that the contractor was not selected by a majority of the owners : Reilly *v.* City of Philadelphia, 10 P. F. Smith 467 ; or that the defendant is charged for a larger front than his lot really contains : Thomas *v.* Northern Liberties, 1 Harris 117 ; or that defendant is not the owner of the lot charged, the same having been dedicated to public use : Board of Health *v.* Gloria Dei, 11 Harris 259.

"If the prohibition of other defences than payment were the only objection to this act, it might well be that it would be unconstitutional only pro tanto, and valid for all other purposes ; but, after much consideration, we are of opinion that it is void as a whole, because it amounts to a taking of defendant's property, not by the judgment of his peers or the law of the land, and is therefore repugnant to section 9 of the Bill of Rights.

"The phrase 'law of the land' (or 'due course,' or 'process of law,' which means substantially the same thing : Cooley Const. Lim. 353), says COULTER, J., Brown *v.* Hummell, 6 Barr 91, means 'the law of the individual case, as established in a fair and open trial, or an opportunity given for one in court, and by due course or process of law.' So THOMPSON, J., in Fetter *v.* Wilt, 10 Wright 461, says, it 'means judgment of law in its regular course of administration through courts of justice.' And the same definition is given by AGNEW, J., in Craig *v.* Kline, 15 P. F. Smith 413.

"It must be admitted that these definitions do not apply literally, so as to require a trial by the ordinary judicial tribunals in cases coming under the regulation of the police power of the Commonwealth, and it was strongly argued by the counsel for plaintiff in this case that the act is valid as an exercise of the police power.

"Much reliance upon this part of the argument was placed on Kennedy *v.* Board of Health, 2 Barr 366. In that case the board of health filed a claim against defendant's lot for the expense of removing a nuisance therefrom, and it was held that on the trial the defendant could not dispute the fact that a nuisance had existed.

"It is somewhat remarkable that no constitutional question was raised in that case, but the views of the court are clearly indicated when, to the argument of counsel for plaintiff in error, that there was 'not a shadow of evidence that there was any nuisance,' SERGEANT, J., replied : 'The legislature have given the board of health final judicial power on that subject.' This is the key-note of the decision. The state, in the exercise of its police power, may pass by the ordinary judicial tribunals, but it cannot, even in this class of cases, take a citizen's property without an *adjudication* of some tribunal authorized by law, upon the facts of the case which justify the taking. The ground upon which all summary

remedies, out of the usual course of law, have been sustained, is that they afford an equivalent by the judgment of a special tribunal, and I have not been able to find any case in which an Act of Assembly has been sustained which provided for the taking of private property outside of the ordinary course of the law, without such equivalent adjudication : Kennedy *v.* Board of Health, 2 Barr 336; City *v.* Houseman, 2 Phila. 349 ; Craig *v.* Kline, 15 P. F. Smith 413 ; Easby *v.* Philadelphia, 17 Id. 337.

"Tried by this standard, the Act of 1848 is found wanting. It provides that, ' It shall be the duty of the commissioners,    *    * upon complaint by any person owning property on said river *    *    * that said banks, or any part of them, are out of repair *    *    * to give notice forthwith to the owner  *    *    * to repair the same within forty-eight hours  *    *    * and in case such owner shall neglect or refuse to cause such repairs to be made    *    *    * it shall be the duty of such commissioners to cause the said banks to be well and thoroughly repaired,' &c.

" Not only is there here no provision for·a hearing of the party to be charged, but none even for an investigation and judgment by any tribunal at all.   The complaint of any neighboring owner makes it at once incumbent on the commissioners to notify the owner to repair, and if he neglects or refuses, then it is imperative on them not to examine and determine whether repairs are necessary, but to ' cause the said banks to be well and thoroughly repaired.'   Such a regulation subjects the property of one citizen to be charged by the private act of another, without investigation or determination by any public officer or tribunal, even *quasi* judicial.   Such regulation is in violation of the letter as well as the spirit of the Bill of Rights.

" We are also of opinion that the act is objectionable as a taking of private property for a private use.   The legislature, in the exercise of its police power for public purposes, such as the preservation of navigation, or of the public health, or other similar use, may undoubtedly charge riparian owners with the burden of maintaining walls or banks, and in so doing the legislature itself may make the adjudication of the necessity of the work to be done.   It is sufficient to say that no such public purpose appears in this enactment.   It is an act applicable only to a small locality, and so far as can be gathered from its text and its provisions, intended to accomplish only a local and private purpose.   For such purpose, though not in terms prohibited in the constitution, it is now settled law that the legislature cannot, either with or without compensation, take or charge private property : Palairet's Appeal, 17 P. F. Smith 486.   Judgment for defendant on the point reserved."

The plaintiffs took a writ of error and assigned for error the entering of judgment for the defendant on the point reserved.

[Philadelphia v. Scott.]

*S. S. Hollingsworth* and *G. W. Biddle,* for plaintiff in error.—— The legislature, in the exercise of the police power of the state, can require the owners of riparian property to maintain banks at their own expense to prevent the overflow of the river. See Cooley on Constitutional Limitations, chap. 16, p. 572 *et seq.,* 584, 594, 595, and cases cited; License Cases, 5 Howard 632.; Respublica *v.* Duquet, 2 Yeates 493; Commonwealth *v.* Alger, 7 Cushing 53; Commonwealth *v.* Tewksbury, 11 Metcalf 55; Vanderbilt *v.* Adams, 7 Cowen 349; Goddard's case, 16 Pick 564. Owners of riparian property may be compelled to maintain the bank :. Cooley on Constitutional Limitations 589; Crowley *v.* Copley, 2 La. Ann. 329. The legislature must judge when it is necessary to exercise this power: Cooley, p. 538, and cases cited; Vanderbilt *v.* Adams, 7 Cowen 351. Blowing up of houses to stop a conflagration, the removal of nuisances to prevent a pestilence, the regulation of riparian banks, to avoid the danger of an overflow, the dredging of harbors in the interests of commerce, may be lawfully done. by the proper police officers, without the sanction of a decision obtained by "due process of law:" New York *v.* Lord, 18 Wend. 129; Kennedy *v.* Board of Health, 2 Barr 366 ; Easby *v.* Philadelphia, 17 P. F. Smith 337; Nesbit *v.* Board of Works, Law Rep. 10 Q. B. 465. The legislature may limit defences to be made to a scire facias sur municipal lien: Kennedy *v.* Board of Health, *supra;* Easby *v.* Philadelphia, *supra;* Broomall *v.* City of Chester, 1 Weekly Notes 228; Philadelphia *v.* Edwards, 28 P. F. Smith 62. A statute may be unconstitutional in part, and the remainder not be void: Cooley on Constitutional Limitations 177 *et seq.;* Commonwealth *v.* Pomeroy, 5 Gray 486; Allegheny County Home's Appeal, 27 P. F. Smith 77; Kensington *v.* The City, 2 Barr 218; Thomas *v.* Northern Liberties, 1 Harris 117; Reilly *v.* Philadelphia, 10 P. F. Smith 467.

*D. W. Sellers,* for defendant in error.—No paper-book for defendant in error was given to the reporter.

Chief Justice AGNEW delivered the opinion of the court, May 8th 1876.

The argument in this case took an extended range of discussion upon the powers of the state, of eminent domain and police. In their leading features, these powers are plainly different, the latter reaching even to destruction of property, as in tearing down a house to prevent the spread of a conflagration, or to removal at the expense of the owner, as in the case of a nuisance tending to breed disease. In the first instance, the community proceeds on the ground of overwhelming calamity; and in the second, because of the fault of the owner of the thing; and in either case compensa-

tion is not a condition of the exercise of the power. The same general principles attend its exercise in other directions, and it is generally based upon disaster, fault, or inevitable necessity. On the other hand, the power of eminent domain is conditioned generally upon compensation to the owner, and for the most part is founded, not in calamity or fault, but in public utility. These distinctions clearly mark the cases distant from the border line between the two powers, but in or near to it they begin to fade into each other, and it is difficult to say when compensation becomes a duty and when not. A case of vested ownership on the bank of a great inland fresh-water river, yet where the flux and reflux of the tide is felt, presents something of this difficulty. The well-settled law of this state is, that, while the owner of land on such a river has an absolute title in the soil to the line of ordinary high water, between this line and the ordinary low-water line, his title is qualified by the public right of navigation. This prevents his use of the soil to the prejudice of the public right, and confers on the state the right to improve the intermediate space for public use without compensation: Commonwealth *v.* Fisher, Richter *et al.*, 1 Penna. Rep. 462, 467 ; Case of the Philadelphia and Trenton Railroad Co., 6 Whart. 25, 46 ; McKeen *v.* Delaware Div. Canal Co., 13 Wright 424, 440.

What then are the relations of the state and the owner of the flats or cripple land lying between high- and low-water lines, and over which the waters of the stream ordinarily come and go ? When by the grant of the state the owner has acquired title to such lands in a state of nature, it is clearly qualified, being subject to public use, and the right to improve the shores for useful public purposes ; yet no duty lies on the owner to shut out the stream, or by making banks to exclude the natural flow of the water. On the contrary, the owner cannot limit the public right of passage in ordinary high water, by structures or deposits on or near to the low-water line : Wainwright *v.* McCullough, 13 P. F. Smith 66 ; and even occupancy by means of wharves is subject to the public right of regulation. That the state can bank out the water is not denied, for this flows from the right to protect the public right of navigation. In this respect the owner's right is subordinate or qualified between the two lines, and he cannot demand compensation, and on the other hand, the state cannot improve at his expense. The influx of the water either from the tide or the natural rise of the river is an existing fact, and comes from no fault on his part, while the state conveyed to him only a qualified title in the soil. In her patent she has burthened her grant with no reservation, except that of a proportion of the minerals. By no contract relation can she impose on him the burthen of the public duty of banking out the stream for public purposes. It is no exercise of the police power of the state on the ground of his fault, whereby

the expense can be laid upon him. Nor can the private interests of other owners of like lands be made a ground of banking at his expense. They bought their lands in like condition, subject to the natural flux and reflux of the waters. If after a rising circumstances make their lands better adapted to new purposes by reason of changes in business and population, certainly no duty upon their neighbor arises out of these circumstances to benefit them at his expense: Rutherford's Case, 22 P. F. Smith 82. The interests of the state may make it a public affair, and cause her to exercise her powers for the public good, but this imposes no duty on the owner to pay the expense. He has done nothing to require him to shut out nature, acting in obedience to her own well-known general laws, subject to which all these owners of marsh lands bought. It would be an abuse of terms to call this an exercise of the police power of the state, in the sense of enforcing a remedy against the owner for a nuisance or a public injury.

But we have been referred to the case of Crowley v. Copley, 2 La. Ann. 390, as a precedent. It is not, however, in point. The question of the power of the state to levee the Mississippi at the expense of the owner of the land was not made in that case. The question made by the owner was, whether the law of Louisiana compelling the owners of lands along the Mississippi to bear the expense of levees, to prevent the overflow of the river in high floods, was a tax contrary to the Act of Congress forbidding the imposition of taxes within five years after his purchase of the land from the United States. The court held that the assessment for levees was not a tax within the meaning and intent of the Act of Congress. No question was made whether the state Act of 1842 was constitutional on other grounds. It seems to have been taken for granted that it was. Besides the case is not parallel to this. The overflow of the Mississippi in high floods is attended with great destruction of property far inland, as well as along the river banks, owing to the low grade of the whole country. The case is one of great public calamity, where the property of the owner may have to be destroyed, as in the case of a great conflagration, to save the mischief from spreading to the dire injury of the public. This could be the only justification for the private injury. Yet even this is doubtful. The reason why a private building may be demolished to prevent the spread of fire is, that it is called for by the immediate necessity of the case. It must be done on the instant, and because of an actual necessity. But could the state, in a time of security, when no fire is present, pull down buildings without compensation at certain points, where it might be supposed the public interest would be served if a fire should happen? No one would concede this monstrous proposition. The state may open or widen streets, and do many things for public convenience and security, but in doing so she exercises her power

[Philadelphia *v.* Scott.]

of eminent domain, and allows just compensation either in benefits or money, or both, according to the circumstances.   So the states along the Mississippi may levee the river for public protection, but it seems scarcely consistent with just rights of property that they should do this by general law at the expense of the owners of private property.

A sudden breach and instant danger might change the rule. Mr. Cooley, in his Constitutional Limitations, states the case as a general principle, on the authority of Crowley *v.* Copley, but without any reference to the precise question decided, or the ground of the exercise of the power.   It would seem probable he attributed it to the exercise of the power of eminent domain, as he begins the next sentence with these words: "And the right of eminent domain is sometimes exercised in order to drain considerable tracts of country."   But if it be this power, the condition of its exercise would certainly be compensation in some form, benefits it might be. A better view of the relations of the owners of land on the Mississippi, it seems to me, is that of Chief Justice Shaw, in the Commonwealth *v.* Alger, 7 Cushing 86–7, when discussing the power of the state to prevent an owner of tide-water land from removing a natural embankment, to the prejudice of the public.   "Principles," he says, "are tested by taking extreme cases.   Take the case of the river Mississippi, where large tracts of country, with cities and villages, depend for their protection upon the natural river bank, which is private property.   Perhaps, under such circumstances, it might not be too much to say, not only that the owner cannot do any positive act toward removing the embankment, but that he may properly be held responsible for the permissive waste of it by negligence and inattention."   Here is no intimation of a liability to throw up new banks, but only a moderate expression of opinion of liability for waste.   A natural marsh, between high- and low-water lines, has no such features as the Mississippi lands, and no such great public calamity to guard against.   No one is interested but the owner of like marsh lands, having a like qualified title, subject to a like natural flow of the river.   So much may safely be said of the original or natural state of the property.   But where the state has banked out the water, and the owner is left in possession of the improvement made by the state, under her sovereign authority and at her own expense, it seems to me he stands in a new and different relation.   The state having, by her own authority, taken the land between high- and low-water lines out of the public use, has, in effect, appropriated it to the use of the owner of the qualified title, and in effect conferred upon him an absolute title.   She has thus benefited him, and it is but just that the duty of repair should now devolve upon him.   To this extent we may, I think, conclude that the Act of March 25th 1848, under which this proceeding took place, is constitutional: Pamph.

[Philadelphia *v.* Scott.]

L. 1848, p. 250. Its title is fairly descriptive of its true purpose, though the act having been passed before the constitutional amendment of 1864, the title has not the same force in interpretation it would have since. It is entitled, " An Act to provide for the repairs of the meadow banks upon the Delaware front, in the county of Philadelphia, above the city of Philadelphia," &c. The purpose of the act was to compel repairs of existing meadow-banks, not to construct them. The only question, therefore, remaining is, whether the act has furnished a constitutional mode of proceeding, to bind the owner of the land to the payment of the expense of the repairs. The following are all its material provisions : " It shall be the duty of the commissioners * * * upon complaint by any person owning property fronting upon such river, or liable to be damaged by the overflow of the same, that said banks, or any part thereof, are out of repair, or in an unsafe or insecure condition, to give notice forthwith to the owner or owners of such part or portion to repair the same within forty-eight hours after such notice, * * * and in case such owner or owners shall neglect or refuse to cause such repairs to be made within the time aforesaid * * * it shall be the duty of such commissioners to cause the said banks to be well and thoroughly repaired, &c., and they shall enter the same as lien against the said premises and the owners thereof." The law then provides for a scire facias to enforce payment, and declares " that upon the trial of such action the said defendant shall only be permitted to aver and prove in defence that the lien, in whole or in part, has been paid since the same was filed, and that all matters necessary for a recovery on part of the plaintiffs shall be considered as proved by the production of the lien and scire facias thereon at the time of trial.

/The law, it will be seen, provides no mode of determining the necessity for repair, not even the judgment of the commissioners, for they are bound on complaint, *forthwith* to give notice, and the owner is bound, *within forty-eight hours after notice*, to make the repairs, and on default, the commissioners shall do the work at his expense. Whether the bank actually needs repair, or the injury complained of, if any, is a total destruction of the bank, demanding reconstruction, or a mere repair, which the owner is bound to do, is not to be ascertained before the liability is settled upon him. He is to pay at all events, and this case itself is evidence of the necessity of the provision to determine the nature of the thing complained of, for we have a finding of $6445.66 against the defendant, a sum which looks more like the price of reconstruction than of repair. Repair is all this law provides for. Perhaps some allowance might be made, and the clause requiring the commissioners " to cause the banks to be well and thoroughly repaired," might be interpreted as inferentially requiring an examination and

decision upon the duty of repairing before they proceeded to do it. But we are met by the proviso, which forbids any defence but payment. There can be no inquiry into the fact whether the commissioners actually did determine it to be a case of necessary repair, whilst *they* may have gone on different grounds. An act which subjects a man to a penalty of over six thousand dollars for not doing the work for which complaint was lodged, should clearly devolve the duty of decision upon some impartial tribunal. The case of Kennedy *v.* The Board of Health, 2 Barr 366, is not in point. There the 27th section of the Act of 29th of January 1818, grounds the right of the board to abate the nuisance in express words in the *opinion* of the *board* that the nuisance tends to endanger the health of the citizens. This is an essential pre-requisite, and the citizen is absolutely entitled to the judgment of the board on this point. This feature is at the foundation of the decision. In that case the constitutional question was not raised. But here the learned judge below was of opinion that the Act of 1848 does not furnish due process of law, within the protection of the 9th section of the Declaration of Rights, that no one shall be " deprived of his life, liberty or property unless by the judgment of his peers or the law of the land." In this view we concur. What is meant by the law of the land has been fully discussed in Craig *v.* Kline, 15 P. F. Smith 413, and the cited authorities. I shall not enlarge upon it. Suffice it to say, the law must furnish some just form or mode, in which the duty of the citizen shall be determined before he can be visited with a penalty for non-performance of the alleged duty. The proceeding must be in its nature judicial, though it is not necessary it should be before one of the ordinary judicial tribunals of the state.

Judgment affirmed.