## Poland Coal Company's Case.

*Constitutional law—Title of act—Private coal companies—Condemnation of land—Police power—Act of June 9, 1911, P. L. 756.*

The first and fourth sections of art. 12 of the Act of June 9, 1911, P. L. 756, giving to private corporations organized for the purpose of mining coal the right to condemn land of another for the purpose of constructing a tramway thereon, or to locate an entry to its property, are unconstitutional, inasmuch as their purpose is not disclosed in the title of the act which is as follows: "An Act to provide for the health and safety of persons employed in and about the bituminous coal mines of Pennsylvania, and for the protection and preservation of property connected therewith." Such sections are not a proper exercise of the police power, and are contrary to sec. 10, of art. 1, of the constitution of the commonwealth.

Argued April 20, 1914. Appeal, No. 26, April T., 1914, by Emra L. Titus, from order of Q. S. Greene Co., Dec. T., 1912, No. 10, appointing viewers in case of Poland Coal Company. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Reversed.

Petition for appointment of viewers under Act of June 9, 1911, P. L. 756, art. XII, secs. 1 to 4. Before INGHRAM, P. J.

The case turned upon the constitutionality of the act of June 9, 1911.

Counsel for appellant stated the questions involved to be as follows:

Questions on (1) constitutionality Act June 9, 1911, P. L. 756—specially its title and art. XII, secs. 1 and 4; (2) right to take private property for private use; (3) right to enter before final adjudication of right of entry and damages; (4) sufficiency of order to and report of viewers; (5) regularity of these proceedings.

1. Do the title and the Act of June 9, 1911, P. L. 756, violate art. III, sec. 3, of the constitution, and does art. XII, secs. 1 and 4 of this act, violate art. I, sec. 10 of the constitution?.

2. Can property be taken under Act of June 9, 1911, P. L. 756, art. XII, secs. 1 and 4, for private use?

3. Petitioner having in petition and accompanying draft designated the property, rights, ways and openings desired, and by prior resolution appropriated same, and the order to view being limited thereto, did not this take from viewers a necessary discretionary power, i. e., the right to determine the practicability and feasibility of petitioner's own land?

4. Right to make entry before final adjudication of right to enter and payment of damages?

5. Are proceedings by Poland Coal Company conformable to the constitution and laws?

The court sustained the constitutionality of the act and made an order appointing the viewers.

*Error assigned* was the order of the court.

*James J. Purman*, with him *Edward Martin* and *James A. Garrison*, for appellant.—Act of June 9, 1911, P. L. 756, offends against art. III, sec. 3, of the constitution: Durkin v. Coal Co., 171 Pa. 193; Road in

Phœnixville, 109 Pa. 44; Dorsey's App., 72 Pa. 192; Stegmaier v. Jones, 203 Pa. 47; Com. ex rel v. Samuels, 163 Pa. 283; Union Ry. Co.'s App., 81 * Pa. 91; Rogers v. Mfg. Improvement Co., 109 Pa. 109; Com. v. Dickinson, 1 W. N. C. 185; Com. v. Mercer, 9 Pa. C. C. Rep. 461; Payne v. School Dist. of Coudersport Boro., 168 Pa. 386; Com. v. Schulte, 13 Pa. Dist. Rep. 294; Cochran v. Library Co., 6 Phila. 492; Penna. R. R. Co. v. Riblet, 66 Pa. 164; Focht v. Reading Stove Works, 21 Pa. C. C. Rep. 524; Henrie v. Columbia County, 24 Pa. C. C. Rep. 171; Price v. Temperance Mut. Benefit Assn., 3 Dauphin Co. 128.

The Act of June 9, 1911, P. L. 756, offends against art. I, sec. 10, of the constitution: Philadelphia Clay Co. v. York Clay Co., 241 Pa. 305; Waddell's App., 84 Pa. 90; Palairet's App., 67 Pa. 479; Wilkinson v. Leland, 2 Peters (U. S.), 627; Keeling v. Griffin, 56 Pa. 305; West River Bridge Co. v. Dix, 6 Howard (U. S.), 507; Ervine's App., 16 Pa. 256; Edgewood R. R. Co.'s App., 79 Pa. 257; Lance's App., 55 Pa. 16; Stewart's App., 56 Pa. 413; Philadelphia, etc., St. Ry.'s Petition, 203 Pa. 354; Altoona Street, etc., Railway Co. v. City Passenger Railway Company, 209 Pa. 280; Lambertson v. Hogan, 2 Pa. 22.

Poland Coal Company is a private business corporation: Pittsburg, etc., R. R. Co. v. Bruce, 102 Pa. 23; Chase v. Harding, 87 Pa. 343; Sholl v. German Coal Co., 118 Ill. 427.

Act of June 9, 1911, P. L. 756, offends against art. I, sec. 6, of the constitution: Springdale Twp. Road, 91 Pa. 260.

*George D. Howell*, with him *Walter C. Montgomery* and *Thomas S. Crago*, for appellee.—The title of the act is sufficient: Com. v. Beatty, 15 Pa. Superior Ct. 5; Com. v. Rapid Transit Co., 219 Pa. 11; Dorsey's App., 72 Pa. 192; Likins' Petition, 223 Pa. 456; Johnston v. People's Nat. Gas Co., 4 Sadler, 215; Carother's App., 118 Pa.

468; Com. v. Conyngham, 66 Pa. 99; Haddock v. Com., 103 Pa. 243.

The Act of June 9, 1911, P. L. 756, is a proper police regulation; Com. v. Muir, 1 Pa. Superior Ct. 578; Com. v. Jones, 4 Pa. Superior Ct. 362; St. Louis Consolidated Coal Co. v. Illinois, 185 U. S. 203; Wilmington Star Mining Co. v. Fulton, 205 U. S. 60; Durkin v. Kingston Coal Co., 171 Pa. 193; Chicago W. & V. Coal Co. v. People, 181 Ill. 270; Consolidated Coal Co. v. People, 186 Ill. 134; Mapel v. John, 42 W. Va. 30.

The taking is not for private use: Stewart's Private Road, 38 Pa. Superior Ct. 339; Dunbar Twp. Private Road, 4 Pa. Dist. Rep. 430; Holmes v. Seely, 19 Wendell (N. Y.), 507; Nichols v. Luce, 24 Pick. (Mass.) 102; Woodworth v. Raymond, 51 Conn. 70; Schmidt v. Quinn, 136 Mass. 575.

OPINION BY HENDERSON, J., October 12, 1914:

The Poland Coal Company is a corporation organized under the laws of the commonwealth of Pennsylvania for the purpose of the mining of coal and the manufacture of coke, the excavation of minerals incidentally developed and the transportation and sale of any or all of the same in crude or manufactured form. Having acquired a body of coal land containing about 1,100 acres, in a part of which its title was limited to one or more seams of coal, it commenced the development of its property. As a preliminary step leading to the efficient organization of its project it made application to the court of quarter sessions of Greene county for the appointment of viewers to assess the damages which might be sustained by the appellant by reason of the appropriation by the company of a portion of the appellant's farm which the company desired to occupy and use for openings, for the necessary right of way, for ingress and egress or traveling ways to and from said openings over, along and through lands of the appellant, an airway for ventilating purposes, pillars composed

of coal or other materials necessary for the support of the passageways, a sufficient quantity of land for a water course to a natural stream to enable the company to discharge the water from the mine, together with a suitable right of way on which to construct and maintain such water course, a right of way from the mine openings over and across the land of the appellant in a southerly direction "toward the public road on the adjacent lands," a right of way over the appellant's land for the purpose of constructing a tramway from the proposed mine opening to a point on adjacent lands where the company had fixed a location of its plant for the manufacture of coal into coke, the said tramway not to exceed one mile in length and also a space of land for the erection of a fan house at the ventilating way. This petition was presented under the provisions of the Act of June 9, 1911, P. L. 756. In compliance with the petition viewers were appointed who made a report setting forth that they laid out the openings, passages, water courses, roadway and tramway as designated in the petition over and through the lands of the appellant including a strip of ground at least 100 feet in width for the location of the tramway. A draft showing the location of the tramway, roadway, water courses, mine openings, passages and pillars accompanied the report. Exceptions were filed by the owner of the land which were subsequently dismissed by the court and thereupon this appeal was taken. The objection made to the proceeding is that the act of assembly on which it rests is unconstitutional in so far as it authorizes the appropriation of the appellant's land to the uses of the coal company. This unconstitutionality is asserted in two respects: First, that the title to the act is not sufficient to cover the provisions to which the petitioner resorts, and, second, that the proceeding is the condemnation of private property for private use. The act of assembly is comprehensive and was intended to provide for the health and safety of all

persons employed in and about the bituminous coal mines of the state and for the protection and preservation of mine property. It provides an elaborate system covering plans of mines, duties of superintendents, foremen, fire bosses, construction of shafts, openings, outlets, ventilation, lighting, use of electricity and various other subjects connected with the business. The title is "An Act to provide for the health and safety of persons employed in and about the bituminous coalmines of Pennsylvania, and for the protection and preservation of property connected therewith." The questions presented in this appeal arise under the first and fourth sections of article twelve, the first of which sections provides that if any person, firm or corporation is or shall be seized of coal lands and shall have opened or shall desire to open a coal mine on said land, and it shall not be practicable to drain or ventilate such mines, or to comply with the requirements of this act as to ways of ingress and egress or traveling ways, by means of openings on lands owned or held under lease and the same can be done by means of openings on adjacent lands, application may be made by petition to the court of quarter sessions of the proper county after ten days' notice to the owner or owners, their agents or attorney, setting forth the facts, particularly describing the place or places where such opening or openings can be made and the pillars of coal or other material necessary for the support of such passageway and the right of way necessary to any public road as may be needed in connection with such opening, and that the petitioner cannot agree with the owner or owners of the land as to the amount to be paid for the privilege of making such opening or openings; whereupon the said court shall appoint three disinterested and competent citizens of the county to view the ground designated and lay out from the point or points mentioned in such petitions, passage or passages not more than eighty feet in area, by either drift, shaft or slope or by a combination of any of said

methods by any practicable and convenient route to the coal of such person, firm or corporation seeking the privilege. The viewers are required to assess damages to the owner for the coal or other valuable material to be removed in the excavation and construction of such passages, also for coal or other valuable material necessary to support the said passages, also right of way from any such opening to any public road or for water courses on the surface for drainage from the mine. The fourth section provides that it shall be lawful for any person or persons, company or companies now or hereafter to be incorporated in this commonwealth to drive headings and construct mine tracks under the surface or partly under and partly over the surface through or over any intervening lands not exceeding one mile in length to or from any coal and connect the same with any entryways, headings, tramways or railroads belonging to any individual or individuals, company or companies, now or hereafter to be incorporated in this state and also with any highway or public improvement. A careful reading of these sections satisfies us that they are provisions for the convenient and economical prosecution of the business of mining by the persons or companies seeking the rights for which these sections provide. The fourth section has reference wholly to the transportation of coal mined by a company which it desires to remove over or through intervening land of another owner, the evident purpose being to authorize the condemnation of a right of way on or below the surface to facilitate the removal of coal located on other land than that of the person over whose property the coal or coke is to be carried. No condition is imposed in any section that any other mode of transportation be impracticable nor is any duty imposed on the viewers to make inquiry on that subject, and in the proceeding under the first section no provision is made for ascertaining the impracticability of any other location for the improvement referred to than on the land of the owner

whose property is to be appropriated. The duty of the viewers in the case of the tramway at least is to approve of the location and assess the damages. As to the drainage or ventilation or means of ingress and egress there is no finding of fact that there was no practical location for such improvements on the 1,100 acres which the coal company controlled. Are the subjects covered by these sections fairly within the title of the act? It is well established that anything which the nature of the subject of a title reasonably suggests as necessary or appropriate for the accomplishment of its express purpose is sufficiently indicated by such title: Com. v. Rapid Transit Ry. Co., 219 Pa. 11. But it is also necessary that the title state the subject with sufficient definiteness to put those interested on inquiry as to its contents: Gackenbach v. Lehigh County, 166 Pa. 448. Where the title points to one subject and it appears from the act that two or more subjects were embraced in the real purpose of the legislation the title is misleading: Allegheny County Home's App., 77 Pa. 77; Rogers v. Improvement Company, 109 Pa. 109.

Is there anything in the language of the title to this act which would reasonably suggest that there was conferred by it authority to one person to appropriate the land of another for the use of a tramway or to take and dispose of coal belonging to another owner or to permanently occupy a portion of land of another for mining purposes? The provision for the condemnation and appropriation of land for transportation of coal or other products of the mine can only be regarded as an aid to the coal company to operate its property more economically than would be the case if it bought a location or operated within its own mines. The testimony taken in the case shows that this was the object of the coal company in instituting this proceeding. About one-third of its property as shown by the testimony of its manager could be drained and worked profitably from the location on the appellant's land

which it had occupied and desired to condemn; whereas the remaining two-thirds could only be worked through shafts or slopes and therefore could not be profitably developed. This is a subject, however, having no relation to the "health and safety of persons employed in and about the bituminous coal mines" or "the protection and preservation of property connected therewith," but is an attempt rather to grant the right of eminent domain to persons or corporations owning coal lands and proposing to mine coal. We are unable to read the first and fourth sections of the twelfth article in the light of the title to the statute without reaching the conclusion that the subject of legislation in these sections is not reasonably within the terms of the title.

It is not questioned that the Poland Coal Company is a private business corporation. It was organized and is managed for private gain exclusively. It has no relation to the public different from any other industrial corporation or any individual who is engaged in a productive enterprise beneficial in a sense to the public but whose object is profit to the owner. It is elementary law that the legislature has not the power to transfer the property of one private owner to another private owner without his consent. Private property can only be taken under the right of eminent domain when the use to which it is devoted is a public one. In determining whether it is a public use or not the inquiry is, by whom is it to be taken and what is the purpose? Palairet's App., 67 Pa. 479; Waddell's App., 84 Pa. 90; Phila. St. Ry.'s App., 203 Pa. 354; Phila. Clay Co. v. York Clay Co., 241 Pa. 305. In the latter case Mr. Justice ELKIN discusses the subject in a convincing opinion in relation to the right of a corporation to lay a tramway on a private road, in which it was held that the clay company was not a common carrier and did not possess the charter powers of a public service corporation and could not in any legal sense be regarded as being engaged in any kind of business in which service

to the public is required.  The proceeding cannot be supported therefore on any theory of the right of eminent domain.

It is contended, however, that it may be supported under the police power of the state, of which power it was said by Mr. Justice FIELD in Bartemeyer v. Iowa, 18 Wall. 138, that it "extends to all regulations affecting the health, good order, morals, peace and safety of society."  In Beer Co. v. Mass., 97 U. S. 125, it was said that however difficult it may be to render a satisfactory definition of the police power there seems to be no doubt that it does extend to the protection of the lives, health and safety of the citizens and the preservation of good order and the public morals.  Generally it is for the legislature to determine what laws and regulations are needed to protect the public health and secure the public comfort and safety; but they must have some relation to these objects.  Personal rights and private property cannot be arbitrarily invaded in violation of constitutional prohibition or fundamental principles under the guise of police regulations.  Where the legislature passes an act which permits the destruction or the taking away of the property of a citizen ostensibly for the public health or comfort the courts may consider the act and determine whether it actually relates to and is appropriate to accomplish this public object.  The supreme law must control in such a case: Powell v. Com., 114 Pa. 265; Jacob's Case, 98 N. Y. 98; Com. v. Bearse, 132 Mass. 542; People v. Salem, 20 Mich. 452; Palairet's App., supra.

In Phila. v. Scott, 81 Pa. 80, consideration was given to the difference between the power of eminent domain and the police power, the latter, as stated by Mr. Justice AGNEW, being generally based on disaster, fault or inevitable necessity whereas the former is conditioned on compensation to the owner and for the most part is founded not on calamity or fault but on public utility. Having regard to these principles in what sense can it be

said that the granting of a right to the coal company to construct a tramway or to locate the entry to its property on the land of another is the exercise of the police power. At the time this proceeding was undertaken the coal company had not commenced its operations. It was the owner of the coal in a large tract of land and about to engage in business, but it was not important to the public that it engage in that work at all nor was the public welfare in any sense in peril. It is not contended that the property might not be worked with equal safety from openings on the property of the company, the only allegation being that it is less convenient and more expensive. But with these questions the police power has no concern. They are matters of utility and of commercial advantage. Apparently, the sections under consideration were not enacted on the understanding that they were police regulations. The provision for the assessment of damages indicates that the proceeding was intended to be a condemnation. Compensation is not a legal consequence of the taking of property under the police power: Com. v. Plymouth Coal Co., 232 Pa. 141. It is not to be questioned that laws regulating the business of coal mining with regard to the safety of those employed in the mines and the security of mine property may be enacted under the police power of the state. Statutes regulating means of ingress and egress, ventilation, the removal of dangerous gases, the maintenance of boundary pillars and other provisions tending to promote the safety of persons employed in mines have been sustained as a legitimate exercise of the police power. It may be that the legislature has power to grant to one owner of coal land the right to remove coal from land adjoining him if that should become necessary in order to carry out the provisions of the statute regulating ventilation, drainage, ingress and egress, etc., but the determination of such a necessity is not to be committed to the uncontrolled discretion of the corporation or individual desiring to open or operate a mine. The right of an

owner to take advantage of the sections under consideration does not depend on the fact that it is impracticable to drain or ventilate the mine or secure ingress or egress thereto or therefrom without an appropriation of the land of an adjoining owner. On the presentation of a petition setting forth the fact he may have viewers appointed and if he choose take possession at once by giving security for damages. No provision is made for adjudication by a competent tribunal of the question of necessity even if a necessity were pretended as to all of the provisions with reference to transportation, drainage, etc. If this invasion of private right may be supported under the police power constitutional protection against the use of private property is of little avail.

The various statutes relating to private roads do not aid the contention of the appellee. Such roads are part of the system of public roads of the state and essential to the enjoyment of those which are strictly public and are open to those who have occasion to use them. They exist under the general power of the commonwealth to establish roads and to condemn land for that purpose: Palairet's Appeal, supra. No one but the coal company would have any right in or lawful use of the tramway and it would be devoted wholly to the private business of the company. It could be operated or abandoned at the company's pleasure. The appropriation lacks the support of the due process of law which the constitution requires and is in effect the condemnation of private property for private use. A careful consideration of the case brings us to the conclusion that the subjects of the first and fourth sections of the twelfth article of the statute are not embraced in the title and are contrary to section ten of article one of the constitution of the commonwealth. The other provisions of the statute are not affected by the conclusion thus reached.

The order of the court of quarter sessions is reversed and the proceeding set aside at the cost of the appellee.