## JANUARY TERM 1871, AT BOSTON.

PRESENT:

HON. REUBEN A. CHAPMAN, CHIEF JUSTICE.
HON. HORACE GRAY, JR.,
HON. JOHN WELLS,
HON. JAMES D. COLT,       } JUSTICES.
HON. SETH AMES,
HON. MARCUS MORTON,

## MIDDLESEX COUNTY.

### CATHERINE SMITH vs. JOSIAH G. PEABODY & another.
### KATE SMITH vs. RUSSELL G. TOLES.

The overseers of the poor of a city have a right under the Gen. Sts. c. 70, §§ 1, 2, to remove children, who, with their mother, a widow, are in the poor-house, to a charitable institution for the support of poor children, in another city within the Commonwealth, against the wishes of the mother; and the mother, after leaving the poor-house, cannot maintain an action for their imprisonment against the president of the board of overseers and its agent, although they have refused to answer her inquiries about the children, if it does not appear that she ever informed the overseers that she was able to support the children, or what was the purpose of her inquiries.

The superintendent of a charitable corporation, to which a pauper child has been sent by the overseers of the poor, is not liable to an action for keeping her imprisoned against the wishes of her surviving parent, because he refuses to tell the parent where she is; if it does not appear that she is in his custody.

TWO ACTIONS OF TORT. The declaration in the first case alleged that the plaintiff, a widow, was the mother of three child-

ren, John, Kate and Thomas, and that the defendants, in October 1865, seized and took the children against her will, and have since kept them imprisoned and restrained against her will, and deprived her of their society and assistance. Writ dated May 21. 1870.

At the trial of this case, in the superior court, before *Brigham*, C. J., it appeared that the plaintiff and her three children, John aged ten, Kate seven and Thomas five years, in October 1865, being poor and in need of support as paupers, went to the poor-house in the city of Lowell, and were there supported as paupers ; that the overseers of the poor of Lowell, at a meeting at which the defendant Peabody presided as mayor of the city, voted that the children should be sent to the Baldwin Place Home for Little Wanderers, a corporation established in the city of Boston, under the St. of 1865, c. 98, " for the purpose f rescuing destitute children from want and shame, providing them with food and clothing, giving them instruction for the mind and heart, and placing them, with the consent of their parents or legal guardians, in Christian homes ; " that in pursuance of this vote, and by direction of the overseers, Lorenzo Phelps, the other defendant, who was superintendent of the Lowell poor-house, took the children, against the plaintiff's wishes, to the Home for Little Wanderers ; and that the plaintiff left the poor-house in August 1866, and was since supported by a pension and state aid which she received as a soldier's widow.

Mary Ann Smith, an older daughter of the plaintiff, testified that she herself asked Phelps where the children were, and he made no reply.

Catherine Carroll testified that the plaintiff asked Phelps, in her presence, if the children were in Lowell, and he made no reply ; and further as follows : " I afterwards went to see the defendant Peabody, and he refused to tell me where the children were, or anything about them ; the plaintiff's brother and I went to him, and the plaintiff went ; we wanted the children ; he would not tell us."

On the foregoing facts and testimony, the judge ruled that the plaintiff had not made out a case, and directed the jury to return

a verdict for the defendants, which was done, and the plaintiff alleged exceptions.

*R. B. Caverly*, for the plaintiff.

*J. F. McEvoy*, for the defendants.

CHAPMAN, C. J.   The declaration alleges that the plaintiff, a widow, is the mother of three children, namely, John, Kate and Thomas, and that the defendants, in October 1865, seized and took these children, and have since kept them imprisoned and restrained, against her will, and deprived her of their society and assistance.

The proof was, that she and her children, in October 1865, being poor and in need of support as paupers, went to the poor-house in Lowell, and were there supported as paupers.   This fact gave to the overseers of the poor the care and oversight of each of them, with power to see that they were suitably relieved, supported and employed, either in the work-house or almshouse, or in such other manner as the city should direct, or otherwise at their own discretion.   Gen. Sts. *c.* 70, §§ 1, 2.   Under the direction of the overseers, they were placed at the Baldwin Place Home for Little Wanderers, an institution in Boston, incorporated by the St. of 1865, *c.* 98.   As the overseers were not bound to retain them within the city limits, but might provide for them elsewhere in a suitable place within the limits of the Commonwealth, they might lawfully place them there.   The purposes of this institution, as stated in the charter, indicate that this would be a suitable place, and there is no evidence in the case to prove the contrary.   The defendant Lorenzo Phelps acted under the authority of the overseers in placing them there, and the defendant Peabody, being the mayor of the city, presided at the meeting at which it was voted to place them there.   The evidence shows that John was ten, Kate seven and Thomas five years of age in 1865 ; and it does not appear that the plaintiff, though she herself has been out of the poor-house for several years, and has been able to support herself by means of her pension, ever informed the overseers that she was able to support them, or that they were informed that this was the purpose for which the inquiry was made for them.   The case is left without evidence on

these points, and the refusal of the defendant Peabody to tell Catherine Carroll where they were, even if she inquired by authority of the plaintiff, does not supply it. The action, being for an illegal taking and imprisonment of the children against the plaintiff's will, is not sustained by any competent evidence.

*Exceptions overruled.*

THE SECOND CASE was an action for false imprisonment, brought against the superintendent of the Baldwin Place Home in behalf of the one of the three children, by their mother as next friend. At the trial in the superior court, *Scudder*, J., directed a verdict for the defendant, and reported the case for the determination of this court; if the action could be maintained on the evidence set forth in the report a new trial to be granted, otherwise judgment to be entered upon the verdict. The case is stated in the opinion.

*D. B. Gove & R. B. Caverly*, for the plaintiff.

*J. F. McEvoy*, for the defendant.

CHAPMAN, C. J. This action is brought in behalf of the plaintiff, an infant under the age of thirteen years, by her mother as her next friend, for false imprisonment of the plaintiff.

The evidence at the trial tended to prove that the mother and her children had a settlement in Lowell; that in 1865, the father being dead, and the mother sick and partially insane, the mother and her three children, namely, John, aged ten years, the plaintiff, aged seven years, and Thomas, aged five years, being in need of relief and support as paupers, were taken to the city poorhouse, to be cared for according to law. This fact gave the overseers of the poor the care and oversight of each of the children, with power to see that they were suitably relieved, supported and employed, either in the work-house or almshouse, or in such other manner as the city should direct, or otherwise at their own discretion. Gen. Sts. c. 70, §§ 1, 2. On October 21, 1865, they voted to transfer them, with several other children, to the Baldwin Place Home for Little Wanderers in Boston, an institution incorporated by the St. of 1865, c. 98. As the overseers were not bound to retain them within the city limits, but might provide for them

elsewhere in a suitable place within the limits of the Common-wealth, they might lawfully place them there. Of course the defendant, who was the superintendent of the Home, might lawfully receive them. When the attorney of the mother called at the Home and demanded Kate of the defendant, he admitted that she had been there, but did not admit that she was there at that time, or that he had taken her away. He said she was near by, but declined to tell where she was, saying that the mother would try to get her away. The evidence fails to prove that she was in his custody or under his control; or that the overseers were not providing for her as a pauper, in the discharge of their duty.

*Exceptions overruled.*