### COMMONWEALTH *vs.* REUBEN L. BEARSE.

Barnstable.    Jan. 24. — April 12, 1882.    ENDICOTT & FIELD, JJ., absent.

The St. of 1867, *c.* 59, so far as it prohibits a person, during the time of holding a camp or field meeting for religious purposes, and within one mile of the place thereof, from establishing or maintaining a building for vending provisions or refreshments, without permission from the authorities or officers having the charge or direction of the meeting, provided, that a person having a regular, usual and established place of business within such limits is not required to suspend his business, is constitutional.

It is not necessary to the maintenance of an indictment under the St. of 1867, *c.* 59, for establishing and maintaining a building for vending provisions and refreshments, during the time and within one mile of the place of holding a camp-meeting for religious purposes, without obtaining permission from the authorities or officers having the charge of the meeting, to show that there was a formal organization of the meeting, or that notice of the meeting was given to the defendant.

INDICTMENT, under the St. of 1867, *c.* 59, in two counts.    The first count alleged that the defendant, at Yarmouth in the county of Barnstable, on August 9, 1880, and from that day till August 16, 1880, unlawfully did maintain a building for vending provisions and refreshments within one mile of the place of the holding of a certain camp-meeting, to wit, a camp-meeting known as and called the Yarmouth Camp-Meeting, and during the time of holding said camp-meeting, which said camp-meeting was there and during said time being lawfully held for religious purposes, the said defendant not then and there having any license, permission or authority to maintain the said building as aforesaid, for the purposes aforesaid, from the authorities or officers having the charge and direction of said camp-meeting, or from any person having a right to give such license, permission or authority. The second count charged a similar offence on August 5, 1881, and from that day till August 15, 1881.    Trial in the Superior

Court, before *Brigham,* C. J., who allowed a bill of exceptions, in substance as follows :

It appeared in evidence that, at the times alleged in the indictment, a camp-meeting of the Methodist Episcopal Church, styled the Yarmouth Camp-Meeting, was held for religious services at Yarmouth in said county; and that the defendant in each year, and during the holding of said meeting, without permission from any authority or officer of such meetings, made sales, at and from his house or building, of provisions and refreshments; that said house or building was erected and maintained by him for that purpose amongst others; that the defendant had a duly recorded lease of the land upon which he erected said house, for the term of eight years from October 1879, and that he erected said house in the months of June and July 1880, and occupied the same with his family about two weeks before the beginning of the camp-meeting in 1880, and about four weeks before the commencement of said services in 1881, and sold therefrom and therein refreshments and provisions to his own boarders, to travellers and to any persons calling therefor; that, after the closing of the camp-meeting season and services, the defendant still continued to occupy and use said house or building, as before and during said meetings, until about October 1, in each year; that in the years 1879 and 1880 public meetings were held upon the camp-meeting grounds before the commence-ment of the camp-meeting services, and a number of families lived upon said grounds a few weeks before and a few weeks after the beginning and ending of such services, such families using their cottages located upon the camp-meeting grounds as summer residences; that, outside of the camp-meeting grounds, there were no buildings near the defendant's building within seven eighths of a mile from it towards Yarmouth, or within three quarters of a mile from it towards Hyannis, and no villages, or any but scattering houses, between Yarmouth and Hyannis, a distance of three miles, and no person occupied the camp-meeting grounds from October to July of each year, excepting the person having the care thereof.

There was evidence tending to show that the defendant was a caterer, and had followed this business in said county for more than twenty years; that, in addition to catering about said

camp-meeting, he had a building for similar purposes near or upon the Agricultural Society grounds in the village of Barnstable, and that he made it a part of his regular business to carry on these two buildings, and to go personally to any town in said county where his services as a caterer were desired. It appeared that the defendant resided at Chatham in said county with his family, except at the times when his family resided with him in the said house or building in Yarmouth, and when he was absent in the prosecution of his business.

There was no evidence that any person gave the defendant notice of the day upon which said camp-meeting services would commence in 1880, and there was no evidence of any notice to any one as to such services in 1881, except the testimony of the Reverend Mr. Willett (the person in charge of said meetings), who notified the defendant one or two weeks before the commencement of such services in 1880, that, if he persisted in establishing a building for the sale of provisions and refreshments during the camp-meeting season, he would be complained of, and who stated that a notice of the holding of said camp-meeting in 1881 was published in the Zion's Herald, a newspaper printed and published in the city of Boston.

The defendant testified that, in erecting said building, he intended to establish a business there to accommodate passers-by and visitors.

The defendant asked the judge to instruct the jury as follows: "1. The evidence in this case does not show the existence of such a camp-meeting in 1880 as is referred to in the statute; or, if it was such a camp-meeting, that its officers had the right to grant the permission or authority referred to in said statute. 2. The St. of 1867, c. 59, is unconstitutional, so far as it makes the sale of provisions or refreshments by the owner or lawful occupier of land, and made upon the land so owned and occupied, unlawful, without the permission of the authorities or officers having charge of a camp or field meeting, within one mile of such premises or place of sale, as no provision is made for compensation to the owner or lawful tenant of such premises. 3. The officers or management of a camp-meeting referred to in the St. of 1867, c. 59, must show that they have taken all necessary steps in order to the establishment of a legal camp-meeting;

and the consent of, or a license from, the owners or legal occupiers of any real estate within one mile of the place of holding such meeting is necessary before such camp-meeting officers can claim the powers conferred by said statute. 4. The government must show that this camp-meeting had some organization establishing or governing it, and that such notice was given of the times of commencement and ending of the religious services as that the jury may infer that the defendant, owning or lawfully occupying premises within one mile of the place of meeting, received such notice. 5. If the defendant had a lawfully established place of business for the sale of provisions and refreshments before the commencement of the camp-meeting services, and was actually and in good faith engaged in providing meals and selling refreshments to parties living on or about the grounds of the camp-meeting, he had the right to continue such business during such camp-meeting services. 6. If, by reason of holding camp-meetings from year to year at a particular locality, other meetings come to be held in advance thereof, and families acquired the habit of occupying their cottages on the grounds of said camp-meeting and around them, before and after such meetings, any person would have the right to construct and maintain a building within one mile of said camp-meeting grounds, for the sale of food and refreshments to such meetings and families as a part of his regular business. 7. A person may at the same time have a regular and usual place of business in more than one town or locality."

The judge declined to give the first, second, third and fourth instructions requested; gave the fifth, adding thereto the words " provided he did so in a place which was his regular, usual and established place of business;" gave the sixth and seventh requests; and further instructed the jury that, to convict the defendant, the government must prove, beyond a reasonable doubt, that, during the times and at the place alleged in the indictment, there was encamped an assembly of persons for religious purposes for a period not exceeding thirty days, and that, during that time, the defendant, within one mile of the place of such assembly, maintained a building for vending provisions or refreshments, such building not being then and there his regular, usual and established place of business; that a camp-meeting need not

be the result of an organization, or an organized body; that the statute refers to any assembly that meets in camp for religious purposes; that an assembly might at any time meet within a few rods of the court-house, and, if it meet as a camp-meeting and for religious purposes, it would be such a camp-meeting as is referred to in the statute.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*J. M. Day*, for the defendant.

*G. Marston*, Attorney General, (*C. H. Barrows*, Assistant Attorney General with him,) for the Commonwealth.

DEVENS, J.  The defendant, who is indicted under the St. of 1867, *c.* 59, for establishing and maintaining a building for vending provisions and refreshments within one mile of the place of holding a camp-meeting for religious purposes, contends that the statute, or at least that portion of it under which he is charged with this offence, is unconstitutional.  He urges, that it does not possess the appropriate characteristics of a police regulation; that it is intended to confer special privileges on camp-meetings, assuming to take away the control of his own property from him, and to give it to others for their profit and advantage; and that it can be perceived that the statute is not designed to protect the just rights of other citizens, or to secure the public good health, comfort or welfare.

The police power of a State extends to all matters which concern its internal regulation.  It embraces those which affect the lives, limbs, health, comfort and welfare of all in their persons and their property.  It subjects both persons and property to those restraints and burdens which are necessary in order that the general comfort and welfare may be secured.  It prescribes the modes in which it is reasonable that each shall use and enjoy his own property, in order that others may be guarded in the reasonable use and enjoyment of theirs, and thus prevents a conflict of rights, by determining what uses and enjoyments by each are consistent with those to which others are entitled.  Cooley Const. Lim. *c.* 16, and authorities cited.

No exposition has been given of this power more thorough and satisfactory, or more often quoted with approval, than that of Chief Justice Shaw in *Commonwealth* v. *Alger*, 7 Cush. 53, 85, in

which he defines it to be " the power vested in the Legislature by the Constitution, to make, ordain and establish all manner of wholesome and reasonable laws, statutes and ordinances, either with penalties or without, not repugnant to the Constitution, as they shall judge to be for the good and welfare of the Commonwealth, and of the subjects of the same," and points out clearly the distinction between the right of eminent domain, which is the right of the government to appropriate private property when the public emergency requires it, on condition of making proper compensation therefor, and the right of imposing those reasonable regulations, limitations and restraints in the use and enjoyment of property, which shall prevent the same from being injurious to others. He concludes by remarking that " it is much easier to perceive and realize the existence and sources of this power, than to mark its boundaries, or prescribe limits to its exercise."

By general laws, religious meetings were early protected from disturbance. St. 1791, *c.* 58, § 8. These laws have been extended to all lawful assemblies, and thus protect them, even if wilful tumult by others on the outside be made on their own lands for the purpose of disturbance. St. 1849, *c.* 59. Gen. Sts. *c.* 165, § 23. *Commonwealth* v. *Porter*, 1 Gray, 476.

It was soon observed that such legislation was necessary for the quiet and good order of camp or field meetings. Held in the open air for periods of some days in succession, and designed largely, among other purposes, to attract those who do not attend, or attend irregularly, stated places of public worship, to induce them to listen to religious instruction, and thus awaken in them a religious interest, such meetings are necessarily more liable to interruption than the services of a regular congregation, alike from the less grave manners of those for whose benefit they are, partially at least, intended, and from the greater facility of coming and going to and from such a meeting and its outskirts, where many, drawn in the first instance by curiosity only, may assemble.

The St. of 1838, *c.* 143, imposed a penalty for gaming, horse-racing, hawking, peddling, or exhibiting shows, within a mile of the place of a field-meeting for religious services. Some of the acts thus forbidden were illegal anywhere, while others were

legal when pursued under proper authority. Like the St. of 1867, c. 59, it did not require of any person, having his place of business within the limits named, to suspend his business. Nothing was said in that statute as to maintaining places for the sale of provisions or refreshments, or the keeping of horses, and no power was given to the " authorities " or " officers " of the camp-meeting to prevent what was thus forbidden. It endeavored only to prevent the gathering of those assembled at the field-meeting being made the occasion in its vicinity of idle or disreputable amusement, or of noisy, even if lawful, business; alike it may be presumed that the general public might not be annoyed by these unnecessary and indecorous attendants, the meeting itself disturbed, and the attention of those whom it was sought to influence diverted thereby. In the Gen. Sts. c. 165, § 22, are first found, in addition, regulations which forbid owners or lessees in the same vicinity from erecting tents or booths, and selling provisions or refreshments therein, without the consent of the camp-meeting authorities. Apparently, the Legislature was of opinion that, while certain things should be entirely forbidden within one mile of these meetings, there were kinds of business that should be so forbidden unless the authorities of the meeting should consent. The latter class is therefore treated as of that character which, if its conduct be pursued by proper persons and under proper rules, of which it leaves the authorities of the meeting to judge, it would not be a disturbance of the meeting. As in the former statute, no one is required to suspend his regular business, and the operation of the law in this regard is only to prevent a person from using his property in a particular way, and of securing to himself some profit thereby, the way adopted being one that he would not have adopted but for the use made by another of his property, which latter use is deemed by the Legislature worthy of protection.

The St. of 1867, c. 59, is as follows: " Whoever, during the time of holding any camp or field meeting for religious purposes, and within one mile of the place of holding such meeting, hawks or peddles goods, wares or merchandise, or establishes or maintains any tent, booth or building for vending provisions or refreshments, without permission from the authorities or officers having the charge or direction of such meeting, or engages in

gaming or horse-racing, or exhibits or offers to exhibit any show or play, shall forfeit for each offence a sum not exceeding twenty dollars : provided, that the powers and privileges herein granted shall be exercised only for a term of not exceeding twelve consecutive days, in any one year; and also provided, that a person having a regular, usual and established place of business within such limits is not hereby required to suspend his business." This act is amended by the St. of 1878, c. 92, by adding after the word "refreshments" the following: "or furnishes shelter and provender for, or has the care of, any horses for pay;" and is further amended by the St. of 1879, c. 56, by striking out the word "twelve," and inserting in place thereof the word "thirty."

Two classes of cases are thus provided for, and it would seem that no serious controversy could be raised against those portions of the act which strictly forbid certain things to be done. It is not necessary that a police regulation should be applicable at all times or in all parts of the Commonwealth. It is sufficient if it apply equally to all under the same circumstances. This law is cautious in its protection of every one in the vicinity in his rights as they exist, or as he has exercised them before the occurrence of the camp-meeting; it only insists that he shall not make that occurrence the occasion of exercising a new business which may disturb it. In the occupation of property it may happen that one may justly ask temporary protection at least from such use of his own property by another as would disturb him. The right to confine the exercise of offensive trades to particular times or places cannot be controverted, assuming always that it be done with the real object and purpose of a police regulation. *Watertown* v. *Mayo*, 109 Mass. 315. Where public schools are established, a police regulation forbidding certain noisy trades from being afterwards established in the immediate vicinity would not be objectionable.

The Legislature is largely the judge of its own powers in reference to these matters. If it can be seen, indeed, that the rights of property are invaded under the pretence of a police regulation, it would be our duty to interfere to protect them.

It is contended that the defendant's use of his own land is subjected to the will of another; that he cannot under this law

use it for an otherwise lawful purpose, except with the consent of another. But no general control has been assumed over his land; no lawful and established business that he has is interfered with. If it be that of selling provisions and refreshments, he may continue it, although the camp-meeting has assembled. If he purposes to make a use of his land that he would not have made but for the assembling of the camp-meeting, that is not an improper police regulation which requires him to obtain the consent of its authorities. The protection of such a meeting, as of every public meeting, is certainly an object in which the public welfare is concerned. The sale of provisions and refreshments is one often subjected to supervision, as liable to occasion disorder. Inasmuch as the defendant seeks to pursue it, not as an established business, but only by reason of the camp-meeting, it is not unjust to him or his use of the property that its authorities shall determine whether they will be disturbed by it.

If a business were in its character such as was, or was liable to become, a nuisance, the Legislature might entirely forbid it. It could equally provide that it should not be maintained except with the consent of those in whose vicinity it was to be carried on, on account of the inconveniences attending it. This does not compel one to submit to others the inquiry whether he shall use his own land in a lawful way, but is a legislative decision that such use is not lawful or permissible, unless consent is obtained from those who are already using their property in such a way that they may be annoyed.

Nor is it the intention of this law to invest the camp-meeting with a franchise by which it may assume the control of the business of selling provisions, &c., and thus of monopolizing the pecuniary advantages to be derived from it. The gift to one of the right to carry on a business in a particular vicinity may be a very valuable right. The authority to control it is equally so, and, if here conferred with a view of investing the camp-meeting with such a privilege for any purpose except the preservation of order, would be subject to serious objection. There would be much reason for asserting that, thus conferred, it was an invasion of the rights of property. An examination of the various provisions of the statute will determine whether all that it has been attempted to accomplish by legislation is merely to limit the use

of property in the interest of the public peace and welfare. That such is its object is shown by the history of the legislation, by the classes of business forbidden absolutely, by those forbidden unless permission is obtained, by the temporary character of such prohibition, and by the fact that no established business is disturbed.

We do not wish to be understood as suggesting that the Legislature might not interfere with an established business at a particular time or times. As if, when the sale of liquor is legalized, it should forbid it to be made within a prescribed distance of a polling-place when an election is going on, or of a muster-field when troops are gathered there for military exercise, or should forbid saloons for the sale of refreshments to be opened under similar circumstances. But the existence of the proviso which permits an established business to be continued indicates how strictly this statute was intended as a police regulation only. Because it might be in the power of the authorities controlling the camp-meeting, by withholding a permission to proper persons under proper rules, or by imposing unreasonable terms upon them, to monopolize the trade in provisions and other accommodations, it is not to be assumed that they will do so. If the right which is given simply for protection in the orderly conduct of their meeting should be abused for the purpose of making it a source of pecuniary profit, it must be inferred that the remedy will be applied by legislation.

We are therefore of opinion, that a law which forbade the defendant, for the time or a portion of the time the meeting was in session, to initiate the business of selling provisions and refreshments, and conduct it without the permission of its authorities, is constitutional, and may well be deemed proper in the interest of the public welfare.

There remains the inquiry whether the camp-meeting must be the result of an organization, or of an organized body, in order to be entitled to the protection of the law, the judge who presided having ruled to the contrary. However informally a camp or field meeting may be arranged, if assembled in good faith for religious purposes, it is protected by law. It is undoubtedly expected that it will be conducted under the direction of some officers or authorities, as a necessity of its own internal police.

It is found that the one which we are considering was in fact in charge of the Rev. Mr. Willett, who notified the defendant that, if he established a building for the sale of provisions and refreshments during the camp-meeting season, he would be complained of. Whether there was a regular organization or not, and whether the authority of the Rev. Mr. Willett was derived from the vote of such an organization, or whether it was simply assented to and acquiesced in by those who gathered there for the meeting, there was still a person competent to exercise, and who assumed to exercise, the power of an officer such as the law contemplates, when it declares that a business such as the defendant prosecuted at the time and place charged shall be so prosecuted only with the permission of the authorities or officers of the camp-meeting. If this were not so, as the defendant is to show as a matter of excuse and defence that he prosecuted a business which was unlawful unless with permission, it is for him to prove that he had such permission from the persons authorized to give it. He does not prove this merely by the failure of the government to prove that the meeting had an organization which established and governed it.

Nor was it necessary to show that previous notice was given to the defendant of the proposed meeting. The meeting interfered in no way with his established business. If he began a new one for temporary purposes, it was for him to see that it was such that he could lawfully establish it.

Without reviewing in detail the instructions requested by the defendant, those which were given conform to these views, nor were any refused necessary to the protection of the rights to which he was entitled. The jury were instructed that the defendant might properly have more than one place of business; that, if he had a lawfully established place of business before the camp-meeting services for the sale of provisions and refreshments to those living in the vicinity, he could lawfully continue the business during the camp-meeting services at such regular and established place; that if, by reason of holding camp-meetings in a particular locality, other meetings were held in advance, and persons occupied cottages either on the grounds of the meeting or in its vicinity before and after the meeting, he could lawfully construct and maintain a building within the

mile limit, for the purpose of supplying them with food and refreshments as a part of his regular business.

Upon the whole case, we are of opinion that, so far as it affects the defendant, the St. of 1867, *c.* 59, is constitutional, and that he has no just ground of exception on account of any rulings given or refused at the trial.     *Exceptions overruled.*