## MARY A. SPRING vs. INHABITANTS OF HYDE PARK.

Norfolk. Jan. 18. — Sept. 29, 1884. C. ALLEN & HOLMES, JJ., absent.

Under the Pub. Sts. c. 80, §§ 40, 41, 75, the board of health of a town has no authority to take possession of a dwelling-house and the furniture therein, without the consent of the owner and occupant and to his exclusion, and use the house as a hospital for a person found therein who is infected with a contagious disease, and is too sick to be removed without danger to his health; and the owner cannot maintain an action of contract against the town for the use and occupation of the house during the time it was so held by the board of health.

CONTRACT. The declaration alleged that the plaintiff was the owner of a dwelling-house in Hyde Park, partly occupied by a tenant, and partly by the plaintiff and her family; that the small-pox broke out in the family of the tenant, and two persons were infected with the disease; that the condition of one of the persons was such as not to admit of her removal without danger to her health, but the other could have been removed without such danger; that the board of health of the defendant town, pursuant to the powers granted to it by the laws of the Commonwealth, acting for and in behalf of the town, took possession of the plaintiff's house and the furniture therein as and for a hospital, and made it subject to the regulations of said board as by law provided; that said board occupied, controlled, and used the house as a hospital for the term of six weeks and one day, from January 20 to March 4, 1882; and that the defendant owed the plaintiff for such use, occupation, and control the sum of $1500.

The defendant demurred to the declaration, on the ground that it did not set forth a legal cause of action; that the board of health, in doing the acts stated in the declaration, was not the servant or agent of the town, but the members were public officers; and that it did not appear that the board of health was authorized to make the contract declared on for or in behalf of the town.

The Superior Court sustained the demurrer, and ordered judgment for the defendant; and the plaintiff appealed to this court.

*S. J. Thomas*, for the plaintiff.

*J. E. Cotter*, for the defendant.

DEVENS, J.  The overseers of the poor of the cities and towns of the Commonwealth have always been treated as public officers, performing the public duties with which they are charged upon their own responsibility.  As they are engaged in performing the duty which the statute had imposed upon the towns of relieving poor persons falling into distress within their limits, they may therefore incur expenses or make contracts, within their lawful powers, for which the towns would be liable.  *Belfast* v. *Leominster*, 1 Pick. 123.  *Oakham* v. *Sutton*, 13 Met. 192. *Ireland* v. *Newburyport*, 8 Allen, 73.  *Smith* v. *Peabody*, 106 Mass. 262.  *Aldrich* v. *Blackstone*, 128 Mass. 148.  The statutes creating or authorizing the creation of boards of health have in a similar way provided for boards which, in the performance of the important duties imposed upon them, act as public officers, but on behalf of the towns by which they are chosen or appointed.  St. 1837, *c.* 244.  Rev. Sts. *c.* 21.  Gen. Sts. *c.* 26. Pub. Sts. *c.* 80.  While it is not provided, in terms, by whom the expenses they are authorized to incur are to be paid, or the contracts they are authorized to make are to be performed, it is necessarily implied that, when expenses are incurred or contracts are made within the lawful scope of their authority, the town is liable therefor.  These boards are official bodies, having no interest in the questions before them, no funds in their possession for the performance of the manifold duties with which they are charged, and, unless they might charge the town on behalf of which they act, they would be, from the want of means, absolutely powerless.  *Springfield* v. *Worcester*, 2 Cush. 52.  *Salem* v. *Eastern Railroad*, 98 Mass. 431.  *Winthrop* v. *Farrar*, 11 Allen, 398.  *Watertown* v. *Mayo*, 109 Mass. 315. *Taunton* v. *Taylor*, 116 Mass. 254.  *Labrie* v. *Manchester*, 59 N. H. 120.  Careful provision has also been made for the ultimate liability for the expenditures which may be made by any town in the care of infected persons, and for the protection of the public.  Gen. Sts. *c.* 26, § 16.  Pub. Sts. *c.* 80, §§ 40, 83.

We do not, therefore, doubt that, for expenses lawfully incurred, or contracts lawfully made, by the board of health of the defendant town, in the performance of its duties, the town must

be held responsible; but it must appear that what the board did was within the scope of its lawful authority. While acting on behalf of the town, it is not an agent of the town in any sense which should make the town responsible for its acts when they exceed its lawful authority, as a principal may often be held liable under such circumstances for the agent whom he appoints. As a general rule, a town is not liable for the unauthorized or unlawful acts of the public officers whom it appoints, although done *colore officii*. *Thayer* v. *Boston*, 19 Pick. 511, 515. *Gordon* v. *Taunton*, 126 Mass. 349. It is not responsible for an assault and battery committed by one of its police officers, although done in the attempt to enforce an ordinance of the city. *Buttrick* v. *Lowell*, 1 Allen, 172.

It is therefore essential to determine whether the plaintiff's declaration sets forth any act done or contract made by the board of health, for which the town is responsible. The count is termed one in "contract," but it sets forth no elements of a contract or agreement, express or implied, so far as the board of health is concerned. It alleges that the plaintiff owned a certain house described, partly occupied by a tenant and partly by herself; that the small-pox broke out in the family of the tenant; that two persons were infected with it, one of whom could not have been removed without danger; that the board, pursuant to its lawful powers, and acting for and on behalf of the town, took possession of the plaintiff's house and furniture therein as and for a hospital, and made it subject to the regulations of the board; that it occupied, controlled, and used said house as a hospital for the term of six weeks and one day. The count does not allege that the board occupied the house by any leave of the plaintiff, or under any implied promise to pay for the same, but asserts a taking of her premises which would be a trespass unless it were done under authority of law. It concludes by a statement that the defendant owes a certain sum by reason of this taking and occupation, but does not here set forth any implied contract or promise to pay.

It must be deemed, therefore, that the plaintiff bases her action upon the ground that the board of health took possession of and occupied her premises by authority of law, and not by reason of any contract made between it and herself, as she sets forth none.

The only allegation of a contract which can be extracted from this declaration is no more than this, that the board of health did a lawful act in seizing, without leave or authority of the plaintiff, her premises and the furniture, and in thereafter occupying and controlling it, and thus, as the act done was lawful, a promise to pay for the same will be implied against the town.

We are thus brought to the inquiry whether the board of health has authority, where a person infected with a contagious disease, and too sick to be removed without imminent danger, is found in any house, to take possession of the premises with the furniture therein, or so much thereof as it may deem necessary, and "occupy, control, and use" the same as a hospital, thus excluding the owner or occupant from his otherwise lawful possession thereof. The Gen. Sts. *c.* 26, §§ 16, 17, (Pub. Sts. *c.* 80, §§ 40, 41,) provide that, where a person is infected with a sickness dangerous to public health, "the board shall make effectual provision in the manner which it judges best for the safety of the inhabitants, by removing such person to a separate house or otherwise, and by providing nurses and other assistance and necessaries. . . . . If the infected person cannot be removed without danger to his health, the board shall make provision for him as directed in the preceding section in the house in which he may be; and may cause the persons in the neighborhood to be removed, and take such other measures as it judges necessary for the safety of the inhabitants."

These provisions contemplate that a contract will be made for the care of a person too sick to be removed, as by furnishing him with necessaries, nurses, &c.; and, further, that the place where he is, with its immediate vicinity and the persons there found, will be subjected to the regulations of the board of health. They give no authority to take possession of the property of any one, to the exclusion of him who is entitled to the lawful possession.

It is however rather upon the Gen. Sts. *c.* 26, § 44, (Pub. Sts. *c.* 80, § 75,) that the plaintiff relies. This section, after providing that, if a disease dangerous to the public health breaks out, the board shall immediately provide a hospital for the sick and infected, adds: "And the board may cause any sick and infected person to be removed thereto, unless the condition of

such person will not admit of his removal without danger to his health, in which case the house or place where he remains shall be considered as a hospital, and all persons residing in or in any way concerned within the same shall be subject to the regulations of the board as before provided." The sections immediately preceding provide for the establishment of hospitals by the town, and for their being subjected to the regulations of the board of health, or a committee of the town appointed for the purpose. The latter clause of the section under discussion is intended to provide for the case which arises where a person cannot be removed, not by establishing the place where he is found as a hospital, and thus excluding therefrom those entitled to the possession thereof, but, by treating it as such, to subject these and all other persons there residing or connected therewith to the regulations of the board. It is considered a hospital for this purpose, in order that thus the danger to the public health may be averted. It by no means follows that, because a place may be subjected to the regulations of the board of health, it may be seized and taken possession of. Under the sections relating to the quarantine of vessels, while the board of health may make regulations relating thereto, extending to all persons, goods, or effects thereon, or all persons visiting or going on board the same, they are not therefore authorized to take possession of, control, or appropriate the same, or any part thereof, to the use of a hospital. Gen. Sts. c. 26, §§ 32–35. Pub. Sts. c. 80, §§ 62–65. It was so held, under a statute similar to our own, in a case much discussed in Maine. *Mitchell* v. *Rockland*, 41 Maine, 363; 45 Maine, 496; 52 Maine, 118.

The case of *Lynde* v. *Rockland*, 66 Maine, 309, 314, is strikingly similar to that at bar. The statute provided that, where sick persons cannot be removed without imminent danger, "the house or place where the sick is shall be deemed a hospital for every purpose aforesaid; and all persons residing in or in any way concerned with it shall be subject to hospital regulations." Rev. Sts. of Maine of 1871, c. 14, § 29. The allegations of the declaration set forth that the plaintiffs were owners of a hotel of great value, and that the board of health had taken possession of and appropriated the same for a hospital. It was held that no authority was conferred upon the board of health to seize or

take possession of such property, and that the town was not therefore responsible for its act in so doing.

Had the power of seizing and appropriating property been conferred on the board of health acting by its own authority, it can hardly be doubted that it would have been given in explicit terms. It is of such a character that its exercise should be attended as far as possible with the care which marks judicial proceedings. It has been contemplated that, in the exercise of its large powers in taking care of the sick and infected, and protecting the community, circumstances might arise where it would be necessary to take possession of property and impress persons also. For such a contingency the statutes have made ample provision. While the regulations and restrictions which the board of health may lawfully impose in regard to the management of property and the conduct of persons in relation thereto, in order that the public health may be protected, and the spread of infection prevented, may often seriously affect its value, the right to impose such regulations as to the management has always been held to be quite distinct from that of appropriating private property, when an emergency requires it, to public use. The one rests upon the police power of a State, which extends to all matters concerning its internal regulation; the other, upon its right of eminent domain. As the one prescribes the modes in which each shall enjoy his own property, in order that others may enjoy theirs, or that their health and welfare may be secured, the owner who is subjected to such regulation has of right no title to any compensation, even if the value of the property is thereby diminished. It is a necessary burden which he bears as a member of society in common with all others similarly situated. As by the other his property is appropriated to the public, he is entitled to proper compensation therefor. *Commonwealth* v. *Alger*, 7 Cush. 53, 85. *Commonwealth* v. *Bearse*, 132 Mass. 542, 546.

The proceedings which are necessary where property or persons are to be impressed, may be initiated upon the application of the board of health. Warrants may be issued by two justices of the peace to executive officers, "requiring them under the direction of the board to remove any person infected with contagious sickness, or to impress and take up convenient houses,

lodging, nurses, attendants, and other necessaries, for the accommodation, safety, and relief, of the sick." One justice of the peace may issue a warrant to the executive officers authorizing them to secure infected articles, to impress aid in so doing, and, under the direction of the board, to impress houses or stores for their safe keeping, and further authorizing the breaking open of shops and stores when necessary. Provision is further made for a just compensation to be paid to those interested by the town in which persons or property are impressed by the executive officers. Gen. Sts. c. 26, §§ 19–24. St. 1877, c. 211. Pub. Sts. c. 80, §§ 43–48.

It is thus seen that, while the impressment of property is provided for, it is accompanied by all appropriate safeguards. It is only by virtue of warrants regularly issued and served by executive officers, who, while they are to act under the direction of the board, are still to obey the precepts contained in their warrants, that property is seized and taken possession of for an important public purpose, and just compensation is provided for.

Independently of these provisions, there is no authority in the board of health to take possession of or impress any place as a hospital. If, therefore, the board of health took possession of the plaintiff's house and furniture, and occupied, controlled, and used said house as a hospital, it had no authority so to do, and the defendant town is not responsible for its action.

*Demurrer sustained.*