## PROHIBITION OF BUSINESS NEAR AN AGRICULTURAL FAIR INVALID.

Circuit Court of Brown County.

A. G. MARKLEY AND FRANK SHRIVER v. STATE OF OHIO.

Decided, April, 1909.

*Constitutional Law—Delegation of Power to Agricultural Societies— In Derogation of Property Rights, When—Police Power and its Limitations—Agricultural Societies Bound by the Limitations of Private Corporations—Tyranny in the Control of Corporations— Creation of Monopolies—Business which Disturbs Religious Exercises Distinguished—Section 7006.*

1. Section 7006 of Revised Statutes of Ohio which provides that "whoever establishes a temporary place of business for the sale of any article whatsoever or offers for sale any such article * * * within one-fourth of a mile of the fair ground of any agricultural society, while the fair of such society is being held therein, unless he had obtained the written permission of the board of such society" and imposing a penalty for the violation thereof, is an unconstitutional exercise of power by the Legislature.
2. Such provision violates Section 1, Article XIV, of the Federal Constitution, because it abridges the privileges and immunities of citizens, deprives them of their property without due process of law, and denies to each the equal protection of the law.
3. The delegation of power to the board of such fair, to determine who shall do the forbidden act, is an unlawful restriction upon a lawful business, giving the board the power to destroy competition and create a monopoly and to deprive a citizen of the right guaranteed to him by Section 1, Article I, of the Bill of Rights of enjoying and possessing his property.

*E. H. Kirkpatrick*, for plaintiffs in error.
*George C. Barnes*, Prosecuting Attorney, contra.

WALTERS, J.; CHERRINGTON, J., and JONES, J., concur.

This is a proceeding in error to reverse the judgment of the lower court.

Plaintiffs in error were indicted under Section 7006 of the Revised Statutes for keeping a place of business, and also for

exposing for sale, and selling certain articles, viz., lemonade, orangeade, ice cream, candy and pop-corn, within one-fourth of a mile of the agricultural fair then being held in Brown county, at Georgetown, by what is known as the Brown County Agricultural Society, on the 7th, 8th and 9th of October, 1908.

Section 7006 is as follows:

"Whoever exhibits or shows any natural or artificial curiosity for any price or gain, or sets up to let or use for profit any swing, revolving swing, flying horses, whirligigs or other device, or whoever establishes a temporary place of business for the sale of any article whatsoever, or offers for sale any such article except as a regularly established dealer in such article at his usual place of business within one-fourth of a mile of the fair ground of any agricultural society, while the fair of such society is being held therein, unless he had obtained the written permission of the board of such society, shall be fined not more than one hundred dollars nor less than one dollar."

It is admitted in the bill of evidence that Markley, one of the plaintiffs in error, owned the real estate upon which the stand or booth was erected.

It is admitted also that the plaintiffs in error did, on the days when the fair was being held, from the stand or booth so erected, sell lemonade, ice cream, candy, orangeade and pop-corn, without having first obtained the written permission so to do from the board.

The only question presented for our consideration is whether or not the provision of Section 7006, which refers to this subject-matter, is constitutional, or whether or not the Legislature was prohibited by the fundamental law of the state from passing so much of this act as is embraced within this indictment. Its constitutionality is based upon the right of the Legislature in passing the act, to do so, because it was a valid exercise by it of what is known as the police power of the state. The police power has its origin and is confined to and deals with that class of legislation which has to do with the public health, public welfare, public morals and public safety. No general definition of this power, comprehensive enough to include within it all cases, has ever yet been written. But when called upon to

apply to it the right of the Legislature to enact a particular law, which for its validity must rest upon the existence of one or more of the objects embraced within its scope, its definition does not seem so apparent or important. Especially is this observation true when applied to this case. In determining whether this portion of this Section 7006 is justified as being within the police power, or is in violation of the Constitution, we must ascertain whether the health, morals, safety and welfare of the public justify its enactment. The solution of this depends somewhat upon the question as to whether the Brown County Agricultural Society is a public or private corporation or agency.

In *Dunn* v. *Agricultural Society,* 46 O. S., 97, the Supreme Court of Ohio held that this, the Brown County Agricultural Society, was a private corporation aggregate, being a number of "natural persons associated together by their free consent for the better accomplishment of their purposes, and were bound to the same care in the use of their property and conduct of their affairs to avoid injury to others as natural persons, and a disregard or neglect of that duty involves a like liability."

If this association was a public agency established exclusively for public purpose by the state, and connected with the administration of local governments, then it might well be said the Legislature had authority to regulate even to prohibition of acts which would interfere with its successful operation. The court, however, having found that it was a private corporation it must be treated the same as a natural person, though it may serve a public purpose.

Mr. Tiedman, in his work on the Limitations of Police Powers, at page 290, says:

"If the business is not harmful the prosecution of it can not lawfully be prohibited to one who will conduct the business in a proper and circumspect manner. Such an one would be deprived of his liberty without due process of law."

At page 301, the same author says:

"It has also been maintained, and we think satisfactorily established, that no trade can be prohibited altogether, unless the

evil is inherent in the character of the trade; so that the trade however conducted and whatever may be the character of the person engaged in it, must necessarily produce injury upon public or upon individual third persons.''

Mr. Justice Brown, in *Lawton* v. *Steele*, 152 U. S., 133, 136 and 137 (14 Sup. Ct. Rep., 499), says:

''To justify the state in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose and not unduly oppressive upon individuals. The Legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations.''

''It will probably not be disputed that every one has a right to pursue in a lawful manner, any lawful calling which he may select. The state can neither compel him to pursue any particular calling, nor prohibit him from engaging in any lawful business, providing he does so in a lawful manner.'' Tiedeman, Section 85.

''If the police regulation of trades and occupations can not be instituted and enforced, except so far as a trade or occupation is harmful or threatens to be harmful in any way to the public, however slight the restraining may be, so much the more necessary must it be to confine the exercise of the police power to the prevention of the injuries with which the public is threatened by the prosecution of a calling, when the law undertakes to deny altogether the right to pursue the calling or profession. In proportion to the severity or extent of the police control must the strict observance of the constitutional limitations upon police power be required. There is no easier or more tempting opportunity for the practice of tyranny than in the police control of occupations. Good and bad motives often combine to accomplish this kind of tyranny. The zeal of the reformer, as well as cupidity and self interest, must alike be guarded against. Both are apt to prompt the employment of means to attain the end desired, which the Constitution prohibits.

''It has been so often explained and stated, that the police power must, when exerted in any direction, be confined to the imposition of those restrictions and burdens which are necessary to promote the general welfare, in other words to prevent the

infliction of a public injury, that it seems to be an unpardonable reiteration to make any further reference to it. But the principle thus enunciated is the key to every problem arising out of the exercise of police power. Applied to the question of prohibition of trades and occupations, it declares unwarranted by the Constitution any law which prohibits altogether an occupation, the prosecution of which does not necessarily, and because of its unenviable character, work an injury to the public." Tiedeman, Section 102.

"As long as a trade does not injure the public health, and is the source of no annoyance whatever to the inhabitants of the locality in which it is conducted, it can not lawfuly be prohibited. Every man has a constitutional right to follow on his premises any calling, provided it does not in any way interfere with another's reasonable enjoyment of his premises." Tiedeman, Section 104.

We can see no element derived from the police power upon which this part of this act can be upheld. To sustain it would be to take another's property without due process of law.

This act in its provisions admits the lawfulness of the things complained of in the indictment, by providing that the written permission of the board of such society is the only requirement. Power is, therefore, here delegated to one person in his discretion to say whether another, his neighbor, shall be permitted to do a lawful act on his own premises, viz., sell his own personal property, which act is not in itself injurious to the public or any private individual, except he may come in competition in the sale of it with the person to whom is granted the power to say whether he shall compet or sell at all.

"The right to pursue any lawful business is more than a mere right. It is property that can not be taken from him without due process of law." *State* v. *Scougl,* 51 N. E., 865.

"It is not the question of how much or how little loss the citizen may sustain, it is a question of the power of the Legislature to deprive a citizen of his property. If the power exists to take any, it would be difficult to fix the limit." *M llet* v. *People,* 117 Ill., 294.

Section 1, Article XIV of the Constitution of the United States provides:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States. Nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law."

Justice Field, in *Slaughter-House Cases*, 16 Wallace, 97, says:

"The privilege and immunities designated are those which of right apply to the citizens of all free governments. Clearly among these must be placed the right to pursue a lawful employment in a lawful manner without other restraints than such as equally affect all persons."

Section 1, Article I, of our Bill of Rights declares:

"All men * * * have certain inalienable rights among which are those of enjoying and defending life and liberty, and acquiring, possessing and protecting property."

The effect of the act in question is to restrict or abridge the right of the plaintiffs in error to use and enjoy their property in a particular manner, so that the fair company may use its property in the same manner to greater profit than it could if each was left to the free use of its or their own as it or they should see fit. It is inimical to Section 1, Article XIV of the Federal Constitution above quoted, because it therefore abridges the privileges and immunities of citizen; deprives them of their property without due process of law and denies to each the equal protection of the law.

The act in question gives to the board of trustees of the fair company the right to say who shall do the forbidden act; and restrains a lawful trade and occupation, and gives it the power to destroy competition, and, therefore, create a monopoly. It takes away from the plaintiffs in error the right guaranteed them by Section 1, Article 1, of our Bill of Rights, the privilege of enjoying and possessing their property. It gives to the fair association an absolute and arbitrary power over the property of others.

The only case which has been cited to us directly in point is reported in 26 Am. Rep., page 189. It is a Kentucky case and the syllabus of the same is as follows:

"A statute forbidding any person to carry on the stabling business within a given distance of the grounds of a specified agricultural society, during the continuance of its fairs, and imposing a penalty for any breach of the law, is an unconstitutional interference with the right of enjoyment of private property."

The statute under which this decision is made is in all respects like the one at bar.

We were cited in argument a Massachusetts case, where a somewhat similar statute was held to be constitutional, and as being a proper exercise of the police power. In that case, however, the contention arose between a camp meeting association while engaged in the services usual and incident to those gatherings, and a carrying on of other business within the prohibited distance, which the court found might interfere and distract the attention of those who might desire to engage in those religious exercises from their proper performance of the same.

Entertaining these views we are constrained to hold that the act in question so far as it relates to the subject-matter in the indictment is unconstitutional, and the judgment of the lower court will be reversed; and, proceeding to enter such decree as the lower court should have entered, the plaintiffs will be discharged.