8614. WOOD *v.* FIRST NATIONAL FIRE INSURANCE CO.

A policy of fire insurance issued in the year 1915, covering a "stock" of intoxicating liquors described as "merchandise," which under the terms of the policy were required to be kept in a described building within this State, occupied by the owner for "mercantile purposes," is void as being in furtherance of and directly connected with an act prohibited by law.

DECIDED DECEMBER 11, 1917.

Action upon insurance policy; from city court of Savannah— Judge Freeman. March 17, 1917.

On the 13th of August, 1915, the First National Fire Insurance Company, hereafter called the defendant, issued to Isidore Woods, hereafter called the plaintiff, a policy of insurance for the sum of $4,000, on a stock of wines, liquors, beers, cordials, and such other merchandise not more hazardous, "while contained in a brick, metal-roof building occupied for mercantile purposes," situated in Savannah, Georgia. On the 12th of November, 1915, this building, together with the liquors, were destroyed by fire. The plaintiff duly presented proofs of loss, but the defendant denied liability; and thereupon the plaintiff brought this action. The defendant demurred to the petition, upon the ground that the contract of insurance entered into by it was null and void as

against the public policy of the State. The court sustained this demurrer, and exception was duly taken by the plaintiff. The defendant also filed an answer in which it set up the illegality of the contract. This answer was demurred to by the plaintiff, and the demurrer overruled, to which ruling the plaintiff excepted. The court permitted the case to proceed because of the insurance upon certain musical instruments consisting of two electric pianos and one electric harp, for which the plaintiff recovered; but as to this recovery there is no exception.

*Osborne, Lawrence & Abrahams,* for plaintiff.

*Anderson, Cann, Cann & Walsh,* for defendant.

JENKINS, J. (After stating the foregoing facts.) While we think the stipulations contained in the policy of insurance attached to the petition clearly indicate that the insured liquors were kept by the plaintiff for the purpose of illegal sale, still, in order to make out a violation of the prohibition law of 1907 (Penal Code of 1910, § 426), it is wholly unnecessary to show for what purpose the intoxicants were kept at the place of business, the criminal act in such a case being merely the keeping on hand of such liquors at such a place. *Cohen* v. *State, 7 Ga. App.* 5 (65 S. E. 1096). Therefore the only question raised in this case which requires further consideration and discussion is, whether the contract of fire insurance covering the liquors so illegally kept was so closely related to the unlawful act as to be a part of that transaction, and therefore void. It is well settled that where the parties to a contract are in pari delicto, no affirmative relief of any kind will be given to one against the other.

The exact question at issue does not appear ever to have been passed upon by either of the appellate courts of this State. The decisions of other jurisdictions upon the subject are not entirely harmonious, and from them no exact and uniform rule can be adduced. Some of the courts have held that a policy of insurance, somewhat but not altogether similar to the one here involved, is not impaired by reason of the fact that the property covered by its terms may have been kept for illegal sale. Mechanics' Ins. Co. *v.* Hoover Distilling Co., 182 Fed. 590 (105 C. C. A. 128, 31 L. R. A. (N. S.) 873); Erb *v.* German-American Ins. Co., 98 Iowa, 606 (67 N. W. 583, 40 L. R. A. 845). In many jurisdictions the contrary rule has been adopted. Kelly *v.* Home &c. Ins. Cos., 97 Mass.

288; Lawrence v. National Fire Ins. Co., 127 Mass. 557; Johnson v. Union Ins. Co., 127 Mass. 555; Carrigan v. Lycoming Fire Ins. Co., 53 Vt. 418 (38 Am. R. 687); 19 Cyc. 626, § 3; Wheeler v. Mutual Reserve Fund Life Assn., 102 Ill. App. 48. In *Mechanics Realty &c. Co.* v. *Leva,* 16 *Ga. App.* 7 (2) (84 S. E. 222), this court said: "An obligation supported by an independent consideration will be enforced, though indirectly connected with an illegal transaction, where the plaintiff does not require the aid of the illegal transaction to make out his case." In that case the early opinion by the Supreme Court of the United States in Armstrong v. Toler, 11 Wheaton, 258 (6 L. ed. 468), rendered by Chief Justice Marshall, is quoted, as follows: "Where a contract grows immediately out of, and is connected with, an illegal or immoral act, a court of justice will not lend its aid to enforce it. . . But if the promise be entirely disconnected with the illegal act, and is founded on a new consideration, it is not affected by the act, although it was known to the party to whom the promise was made, and although he was the contriver and conductor of the illegal act." In *Barfield Music House* v. *Harris,* 20 *Ga. App.* 42 (92 S. E. 402), a rule of law recognized by this court was quoted from 6 R. C. L. 821, as follows: "Even though the parties to an action have been engaged in a transaction either malum in se or prohibited by law, yet if the cause of action between them is disconnected from the illegal act and is founded upon a distinct and collateral consideration, and the plaintiff is not obliged to resort to the illegal contract or transaction in order to maintain the suit, the illegality of the former transaction will not impair or bar the right to maintain the suit. If the contract or obligation does not depend upon or require the enforcement of the unexecuted provisions of the illegal contract, it will be carried out. Therefore the test is whether the contract sought to be enforced can be separated from the illegal acts or contracts relied upon as avoiding it, and whether the plaintiff requires any aid from or must in any way rely upon the illegal transaction in order to establish his case." Applying the rules of law above indicated to the facts of the present case, it will be observed that by the very terms of the policy sued on it was provided that the owner of the stock of liquors was to be protected against loss by fire only when they were contained in the described storeroom

"occupied for mercantile purposes." The insurance issued in favor of the plaintiff was in the sum of "$4,000 on a stock of wines, liquors, beers, cordials, and such other merchandise not more hazardous, *while contained* in the brick metal-roofed building, *occupied for mercantile purposes,* and situated" in Savannah, Georgia, as therein described. Even if it did not manifestly follow that such a "stock of merchandise" thus to be kept in a public storeroom was for the purpose of sale, still the provision of the policy limiting liability thereunder, except *while the liquors were contained* in the designated storeroom occupied by the plaintiff for mercantile purposes, absolutely imposes an illegal purpose and design within the express terms of the contract itself. The policy is one of ordinary mercantile insurance. It connot be said that the reference to the liquors as being contained in the mercantile storeroom is merely for identification of the property insured, and for descriptive purposes only. In addition to the provision already quoted, the first clause of the policy stipulates the amount of the insurance granted "on the following described property while located and contained as described herein, *and not elsewhere.*" Since the subsequent clause provides that the insurance shall be operative while the liquors are in the brick storeroom occupied for *mercantile purposes,* it can not even be said that the plaintiff, under the terms of the policy sued on, might have converted his mercantile business into a private warehouse by closing up his place of business. Even had this in fact been done, the risk then incurred would not have been that embraced by the express terms of the policy, since it insured the liquors only while contained in a storeroom occupied for mercantile purposes, and not as a private storage-room or warehouse. Be this as it may, however, the question is not what might have been, but what was; and since, by the terms of the policy as actually entered into, insurance was contracted for upon a stock of merchandise consisting of liquors while contained in a storeroom occupied for mercantile purposes, the contract was illegal in its inception and void ab initio. If, then, by the terms of the policy the parties to the contract agreed that the insured merchandise should be kept in violation of law, can it be said, in the language of Chief Justice Marshall, that the contract is "entirely disconnected with the illegal act?" But if, as we think, the rule adopted by the courts of this State does not

require that the contract sued on be "entirely disconnected" with the act done in violation of law, but that the agreement will be enforced even though "indirectly connected" therewith, provided "the plaintiff does not require the aid of the illegal transaction to make out his case," can it even then be said that the contract is not directly connected with the unlawful act, or that the plaintiff does not require its aid, when by the terms of the policy itself such continued violation of the penal law amounted to an expressed condition of its validity? As was said in the *Barfield Music House* case, supra, "The test whether a demand connected with an illegal transaction is capable of being enforced at law is whether the plaintiff requires any aid from the illegal transaction to establish his case." Here, by the terms of the policy sued on, it was expressly agreed that the property insured was to be kept and maintained in violation of law, and thus it is clear that the compliance with such unlawful agreement and the aid of such illegal transaction is necessary to the establishment of plaintiff's case. Even in those jurisdictions where the validity of somewhat similar insurance policies have been sustained as not contravening public policy, the courts have laid down legal principles which we think are in entire harmony with the doctrine we now set forth. In Niagara Ins. Co. *v.* DeGraff, 12 Mich. 124, the policy included, among other things, groceries among which were liquors; and it was contended that the policy was void, because to sustain the policy with liquors included would be insuring an illegal traffic. In sustaining the validity of this policy, the court said: "By insuring his property, the insurance company has no concern with the use he may make of it, and, as it is susceptible of lawful uses, no one can be held to contract concerning it in an illegal manner unless the contract itself is for a directly illegal purpose. Collateral contracts, in which no illegal design enters, are not affected by an illegal transaction with which they may be remotely connected." In Carrigan *v.* Lycoming Ins. Co., 53 Vt. 418, the court said: "If the purpose of the contract in question had been to protect the assured in the sale of intoxicating liquors, it would have been null; but the greater part of the property insured consisted of goods, insurance upon which was subject to no objection. The contract was legal upon its face, nothing appearing to show that the wines and liquors were intended for illegal sale. . .

22

There was evidence tending to show that he illegally sold them, including those not used in compounding medicines; and the fact may have been that the latter trade was the larger and his main one. If such illegal traffic was the business of the assured, and his legal traffic and transactions with other property a mere cover, ostensibly carried on for the purpose of enabling him to secrete and disguise his iniquity, the purpose of the contract would be to protect him in his illegal ventures, and it would therefore be void; but if he carried on business, using alcoholic liquors legitimately in his drug trade, and occasionally sold them in violation of law, we think that, *if no illegal design entered into the making of the contract in its inception,* it would be so far collateral to the illegal acts that it would be inconsistent, and in accordance with no well adjudged case, to hold it null." In the case now before us, it can not be said that the contract was legal upon its face, since not only would it seem to have been manifest that the stock of merchandise was kept for illegal sale, but furthermore the illegal design as entered into by each of the contracting parties was clearly expressed, in that the intoxicants, under the terms of the policy, were to be kept in the place of business of the insured, used for mercantile purposes; and since this provision is not susceptible of an interpretation that the keeping of the intoxicants was lawful, it follows that the contract itself is on its face made in direct furtherance of an illegal purpose. The facts of the present case appear to us as being so far different from those stated in *Phenix Insurance Co.* v. *Clay,* 101 *Ga.* 331 (28 S. E. 853, 65 Am. St. R. 307), that the result properly obtaining in that case can not, under the same rule, follow here. There it was held that "The mere fact that a house is let to and occupied by a lewd person, which, with the knowledge of the owner, is to be used by her for purposes of prostitution, does not of itself avoid a policy of insurance issued thereon in favor of the owner. The contract of insurance is not so connected with the contract of rental as to prevent, in case of loss, the maintenance of an action on the policy by the owner." If, however, in that case, the policy of insurance had been expressly conditioned upon the maintenance of the business of prostitution in the house insured, we apprehend that the decision would have been different. Or, if the owner in that case had brought suit against his tenant for the rent of the house, leased for such purpose

or with knowledge that it would be so used, a recovery would not have been allowed. *Harris* v. *Barfield Music House,* 18 *Ga. App.* 444 (89 S. E. 592); *Morris* v. *Terre Haute Brewing Co.,* 17 *Ga. App.* 383 (87 S. E. 159). While it might be said that in the *Phenix Insurance Co.* case, supra, the issuance of the insurance to the owner of the realty was in a very remote and indirect sense connected with the independent illegal business of the tenant, still, in order to enforce the contract of insurance in that case, the plaintiff was in no wise, even remotely, compelled to invoke the aid of the acts done by his tenant in violation of law. As was stated by Chief Justice Simmons in that case, "The policy was for a valuable and legal consideration, and for what appears on its face to be a good and lawful purpose. It was made not to protect the business of keeping a lewd house, but to protect the property of the owner of the building." And further: "The owner could, without violating the policy, use his house for any other and lawful purpose which would not increase the hazard. *The contract does not require that the property shall be devoted to any one use* [italics ours], and, as it is susceptible of lawful uses, the company can not be held to have contracted concerning it in an unlawful manner unless the contract is itself for an illegal purpose." Quite different are the facts in the present case. Here it must necessarily be said that the contract of insurance is connected with and grows directly out of the illegal use of the property insured; and since in this case "the contract *does* require that the property shall be devoted to one use," and that an illegal one, we think the doctrine laid down in the *Phenix Insurance Co.* case is in entire harmony with the ruling of the trial judge in sustaining the demurrer to plaintiff's petition.

*Judgment affirmed. Wade, C. J., concurs. Luke, J., dissents.*

LUKE, J., dissenting. I do not agree to the conclusion reached by the majority of my brethren in this case. Under the law at the time of the execution of this contract of insurance (1915) a person could have a property right in, and could hold as property, wines, beers, and liquors. It is my opinion that when the State declares by statute that property may be owned by its citizens, such property may be insured as against loss by fire. In this case it was not the use to which the property might be put that the contract of insurance covered, but the contract was for an indemnity

against the loss of the property by fire. In the case of *Phenix Insurance Co.* v. *Clay* (supra) the Supreme Court permitted the plaintiff to recover upon a contract of insurance that indemnified the owner of a certain building against loss by fire, where it was admitted that the plaintiff was renting the property with full knowledge that it was to be used for an illegal purpose, to wit, a lewd house. The court in that case held that it was not the use to which the property was put that was covered by the contract, but it was a contract of insurance to pay for the loss of the property if destroyed by fire. What is the difference in the *Phenix* case and this case? At the time of the fire the property in both instances was being put to an illegal use. The use to which the property was being put is a mere incident, and should not render illegal a contract of indemnity against its loss by fire.